## POPE v. WITHERSPOON et al.   (No. 6488.)

(Court of Civil Appeals of Texas.   San Antonio.   June 18, 1921.)

**1. Trespass to try title ⬦11—Plaintiff need prove title only from common source.**

Under Rev. St. art. 7749, making it sufficient to show by deeds a chain of title emanating from a common source, the burden is on plaintiff to deraign his title from the sovereignty of the soil unless there is a common source of title shown.

**2. Deeds ⬦38(1) — Description is certain which can be made certain.**

Descriptions of land are certain which can be made certain.

**3. Trespass to try title ⬦41(2)—Descriptions in deeds held sufficient to show parties deraigned title from common source.**

In trespass to try title, deeds introduced by plaintiff to show the title of defendant which contained descriptions varying from those in plaintiff's chain of title *held* to show that the land referred to was the same land, and to establish a common source of title.

**4. Trespass to try title ⬦35(2)—Equitable right cannot be relied on under plea of not guilty.**

Though the plea of not guilty in trespass to try title authorizes any defense which defeats recovery, since the suit is possessory, it does not authorize an unforeclosed equity in defend-

ant to defeat the recovery of the land by the true owner having the paramount legal title under the common source, but such equity must be set up by adequate pleading.

**5. Subrogation ⬦14(2) — Subsequent incumbrancer held not entitled to subrogation against purchaser of one of several tracts.**

Where a number of tracts of land had been sold subject to a vendor's lien, and two of them were resold to a subsequent purchaser who discharged the portion of the lien note chargeable against his tracts, a subsequent incumbrancer for money loaned to the first purchaser has no right of subrogation against the subsequent purchaser, especially where it was not shown the money loaned was applied to the payment of the original vendor's lien note, though the subsequent incumbrance recited the existence of that indebtedness.

**6. Vendor and purchaser ⬦257 — Lienholder does not acquire title without foreclosure.**

The holder of a lien upon tracts of land acquires no title thereto without foreclosure by proceedings in which all persons who had acquired interests in the land were made parties.

Error from District Court, Nueces County; W. B. Hopkins, Judge.

Trespass to try title by W. C. Witherspoon against W. E. Pope and others. Judgment for plaintiff, and the named defendant brings error. Affirmed on rehearing.

G. R. Scott and Boone & Pope, all of Corpus Christi, for plaintiff in error.

E. B. Ward, of Corpus Christi, and Taliaferro, Cunningham & Moursund, of San Antonio, for defendant in error Witherspoon.

COBBS, J. This is an action in the usual form of trespass to try title to lands. It was tried without a jury. Upon request of defendant, the court made special findings. There is also in the case a statement of facts. The court rendered judgment in favor of defendant in error for the land, and the first question raised here is that the trial court erred in finding that Mrs. H. M. King was the common source of title. As the court's findings are much in the nature of conclusions, we cannot clearly understand it without going to the statement of facts filed. Spearman v. Mims, 207 S. W. 574.

[1] In trespass to try title, the burden is on the plaintiff to deraign his title from and under the sovereignty of the soil, unless there is a common source of title shown. The necessity in this case of showing title from the sovereign is attempted to be obviated by introducing an intervening common source, in the person of Mrs. H. M. King, to which all these claimants are alleged to go in lieu of the sovereign. See article 7749 of the Revised Civil Statutes, providing that it shall not be necessary to deraign title beyond a common source, but suf-

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ficient to show by deeds a chain of title emanating from and under such source. Branch v. Deussen, 108 S. W. 164.

[2] Defendant in error introduced muniments of title for the sole purpose of showing the common source, which it is contended did not describe the land in controversy. In regard to descriptions of lands, it is well settled that is certain which can be made certain. Bitner v. Land Co., 67 Tex. 342, 3 S. W. 301.

[3] The court found that the common source of title was Mrs. H. M. King, who conveyed 20 acres out of section No. 50, lot No. 20, of the Flour Bluff and Encinal Farm and Garden tracts in Nueces county.

The petition describes section No. 50 and 20 acres out of section 50, lot No. 20, out of Flour Bluff and Encinal Farm and Garden tracts, and introduces the title, to wit: King to Timmins describes section 50, Encinal and Flour Bluff Farm and Garden tracts; Timmins to Witherspoon describes section 50, lot 19, of Flour Bluff and Encinal Farm and Garden tracts. And second one, from and to same parties, describes section 50, lot No. 20, of the Flour Bluff and Encinal Farm and Garden tract.

The main defense of petitioner was urged under the plea of "not guilty." The case was tried by the court without a jury, and judgment was rendered for defendant in error for the land.

To prove the common source of title, the defendant in error introduced a number of consecutive transfers to plaintiff in error, each of the deeds describing the land as being lands out of "Flour Bluff and Encinal Farm and Garden tracts." In the deed of King to Timmins are described various lots, but no section 50, lot 19, and no section 50, lot No. 20, and it is not described as "Flour Bluff and Encinal Farm," etc., but "Encinal and Flour Bluff Farm," etc. Then follow deeds from Timmins of the land as described in Mrs. King's deed. The lots conveyed are Nos. 19 and 20 out of section 50.

Looking to the instruments introduced, and reading the recitals, references, and descriptions therein, the only conclusion that can properly be reached is that the reference is to the same land and identifies it, and that the common source is established. Bateman v. Jackson, 45 S. W. 224; Echols v. Jacob Mercantile Co., 38 Tex. Civ. App. 65, 84 S. W. 1082; Edwards v. Smith, 71 Tex. 159, 9 S. W. 77; Minor v. Lumpkin et al., 29 S. W. 801; Malone v. Long, 128 Md. 377, 97 Atl. 643. It is immaterial that the descriptions of the deed and petition do not exactly correspond, if it is apparent that the same land is meant. Gray v. Kauffman, 82 Tex. 68, 17 S. W. 513.

This assignment is overruled.

The record further shows that Mrs. King retained in her deed to R. L. Timmins the vendor's lien and superior title to secure a part of the purchase money payable in two notes. She transferred the second of these notes to John Tod, together with the superior title to the land. This note was released by Tod to Timmins. Timmins conveyed lot No. 19 out of section 50 to C. G. Witherspoon, on the 17th day of April, 1907; also lot No. 20 out of section 50, April 26, 1907, to C. G. Witherspoon. Then Timmins, subsequent to Witherspoon's purchase, executed a deed of trust to C. W. Ogden, trustee for Mrs. King, to secure two notes for $11.126.91, each describing them as the purchase-money notes for the land given by Timmins to Mrs. King, filed for record January 17, 1907. Tod, who purchased note No. 1 through his agent, Drought, released to Timmins note No. 1 on June 11, 1909, and on July 7, 1909, a release to same note due Mrs. King was executed by Ogden, trustee. October 13, 1908, Timmins executed a deed of trust to J. D. Crenshaw, as trustee for Mrs. Bodet, to secure note for $3,000, reciting it was borrowed—

"for the purpose of paying balance of the purchase money which the above-mentioned vendor's lien was retained to secure, and it is agreed that Mrs. Sophia Bodet be subrogated to all rights and privileges of said vendor's lien."

It was properly filed November 14, 1908. Mrs. Bodet transferred this note and lien to Mrs. Lyle Malone for a valuable consideration, and it was filed for record February 4, 1910. On March 1, 1910, the property described in deed of trust was sold to satisfy note purchased by Mrs. Malone. On October 1, 1910, she sold same through her attorney to Thomas W. Dunlap, which deed was duly filed for record, and she also made to him, on February 17, 1911, her quitclaim deed, also duly filed for record.

On October 5, 1910, Timmins quitclaimed and released to Thomas W. Dunlap all the rights in the described property, and a number of other lots, being same land conveyed by Mrs. King to him. Dunlap sold to Brooks and Brooks sold to Stanfield, retaining vendor's lien. Dunlap sold half interest in the notes to Jess W. Taylor. Dunlap and Taylor brought foreclosure suit, which property, being sold at sheriff's sale, was purchased by Taylor, who sold to S. C. Ingram, and Ingram sold to W. E. Pope.

[4] The chief defense was subrogation, presented under a plea of "not guilty." There were no special equitable defenses specially pleaded. Under the plea of "not guilty" any defense that defeats the recovery may be shown. That is because such a suit is possessory, and any bar that can be properly raised to defeat an entry may be interposed. But we know of no rule of pleading that will authorize a mere unforeclosed equity,

not properly pleaded, to be used under a plea of "not guilty" to defeat the recovery of the land by the true owner having the superior, paramount legal title under the common source, without an adequate pleading setting up and proving the supposed equities. Under a plea of "not guilty." the introduction generally of mere equities to establish claims of subrogation will not be entertained. See Wilkin v. Owens & Bros., 102 Tex. 199, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867, in which the court says:

"It is held distinctly in the case of Fuller v. O'Neil, 69 Tex. 349, that in order to assert an equity of subrogation in property that had been illegally sold the facts must be pleaded. We think this is a correct ruling, and was approved by this court in the case of Crow v. Fidler, 3 Tex. Civ. App. 582, and in Matthews v. Moses, 21 Tex. Civ. App. 496, in which applications were made to this court for writs of error and refused. See, also, Black v. Garner, 63 S. W. 918."

And further on in the same case, discussing Williams v. Wilson, 76 Tex. 69, 13 S. W. 69, the court says:

"Since in an action of trespass to try title a defendant without a plea may show any fact that will defeat the plaintiff's right to recover, since in making out their case they showed the lease and the purchase money that was paid for it, they were held not entitled to recover without tendering the consideration shown to have been paid their ancestor for the land. We think that case clearly distinguishable from this, in which the attempt is to subrogate the parties claiming under the purchase to a lien upon the lands for the purchase money, on the ground that it had been used in paying the debts of the estate and the heirs had derived the benefit thereof."

[5] If the facts showed such a case as, in the administration of justice, should be reversed and remanded to permit petitioner to amend his pleadings, we would do that. But, as we understand the facts, no good would be accomplished by so doing, and therefore it will not be done.

To restate some of the facts: Mrs. H. M. King sold to R. L. Timmins a large number of lots (including the two in controversy), retaining the vendor's liens on all the land conveyed to him to secure their purchase-money notes. The second maturing note, maturing two years after date, she transferred to John Tod. That note being paid, the lien on that note was released by her to Timmins. Timmins, by two several deeds, one dated April 17, 1907, conveyed the two lots, Nos. 19 and 20, sued for to C. G. Witherspoon, who, in turn, having paid the purchase price of said lands to Timmins, secured release therefrom.

In no way does Witherspoon, defendant in error, assume the payment of any sum of money due to Mrs. King. In fact, as the matter stood, he was in a position, if it had been necessary, to require Mrs. King to foreclose her lien on all the lots, and require that those unsold at the time be sold first, to protect his purchase. We have looked in vain to ascertain from any instrument, recital, or oral testimony, for that matter, where Mrs. King was ever paid by Timmins the amount due her on the other note, except by inferences and presumption. It is admitted by petitioner in error that she executed no release for it. The only evidence by which there is any claim that petitioner paid off any part of that lien, and is subrogated to her lien, or any other equity is claimed by petitioner to be in the recitals of a deed of trust from Timmins to Crenshaw, trustee, of November 13, 1908, which was after Timmins had parted with his title to Witherspoon, made for the benefit of Mrs. Sophia Bodet, in which it is recited, among other things, after describing the land, to further identify the same as the property "conveyed by Mrs. H. M. King to R. L. Timmins * * * and upon which a vendor's lien was retained in said deed," etc. The trust deed them continues and says:

"That whereas, R. L. Timmins and Willie R. Timmins, the said parties of the first part, are justly indebted to Mrs. Sophie Bodet, party of the third part herein, as evidenced by one certain promissory note executed by the said parties of the first part, and payable to the order of the said party of the third part, as follows, to wit:

"$3,000          San Antonio, Texas, Nov. 13, 1908.

"One year after date we, or either of us, promise to pay to the order of Mrs. Sophie Bodet, in San Antonio, Texas, the sum of three thousand dollars, with interest from date at the rate of eight per centum per annum, interest payable semiannually. In case this note is placed in the hands of an attorney for collection after maturity, or the same is collected through the probate court, we agree to pay the further sum of ten per centum of the amount due for attorney's fees. The money is borrowed for the purpose of paying off the balance of the purchase money which the above-mentioned vendor's lien was retained to secure and it is agreed that Mrs. Sophie Bodet shall be subrogated to all the rights and privilege of said vendor's lien."

The notes of Timmins to Mrs. King are each for the sum of $11,126.91, dated November 10, 1906, whereas the note in Timmins' deed of trust to Crenshaw trustee, to secure Mrs. Bodet, is dated November 13, 1908, and is for the sum of $3,000. In the former notes they bear interest at 6 per cent. per annum, and in the latter note it bears 8 per cent. interest per annum. There is nothing in that deed of trust except the reference to the deed in describing it by the words, "upon which a vendor's lien was retained in the deed," that pretends subrogation, other than in this subsequently executed trust deed in the language set out. That cannot bind defendant

in error by any possible extension of the doctrine of subrogation of petitioner to the rights of Mrs. King, by presumption that the $3,000 was paid Mrs. King on the note. For aught this record shows, Mrs. King may still hold that note, and it would be just as much a lien against those other numerous lots sold to Timmins as against these two, and enforceable against all, unless barred by the statute of limitations.

There is no pretense of any foreclosure of Mrs. King's lien, whether as vendor or under any deed of trust or other procedure, but the claim is made under rights, secured under other foreclosures of subsequent liens to which neither Mrs. King nor defendant were parties or privy in estate, and he cannot be bound thereby. A mere debtor cannot subrogate the stranger who lends money to a lien held by a creditor, regardless of whether the creditor joins or whether the subsequent purchasers join. Mrs. King could not have foreclosed this deed of trust given to secure Mrs. Bodet in that $3,000 note, any more than Mrs. Bodet or her assignee could have foreclosed the deed of trust given to secure Mrs. King, under the language of the deed of trust attempting a subrogation to a note not shown to have any connection with the note held by Mrs. King. The notes are different. The deeds of trust are different, and the transaction different. If paid Mrs. King, there was no legal or equitable subrogation made by any party who had any right to do so. Suppose petitioner was in possession of lands upon which Mrs. King had a lien against Timmins; this would not give him the right to hold possession against defendant, the true owner, for he had no superior title by which to assert such a right. See Baker v. Compton, 52 Tex. 252. Under this authority the vendor may recover the land reciting ownership of unpaid purchase-money notes, but the mere assignee of such notes cannot do so. Subrogation can do no more than to create just such rights as were assigned, and it is clear that Mrs. Bodet herself, under the rights secured to her by the Timmins note, described in the deed of trust, could not defend against defendant in error in trespass to try title under a plea of "not guilty."

[6] It cannot for a moment be held that a person holding a mere lien acquires title without foreclosure. Russel v. Kirkbride, 62 Tex. 457. To do so would have required the making of Witherspoon and all the parties holding the numerous unsold lots, set out in the deed from Mrs. King to Timmins, parties. Williamson v. Conner, 92 Tex. 581, 50 S. W. 697.

Timmins, after he had parted with his title to defendant in error, had no power or authority thereafter to incumber it with any lien against his vendee. Gillum v. Collier, 53 Tex. 593.

While Timmins, as against himself, could substitute a new note and lien to Mrs. King, and impress it as a part of the consideration of the purchase, he did not have the power to extend it to the land he had sold, without the consent of his vendee, based upon some valuable consideration to compel him to bear such imposed burden. However, we do not think he attempted to do so.

We have not discussed the legal effect of other transfers and sales bearing on petitioner's claim of subrogation, because, from what we have said, he was in no position to assert such a claim. But we have determined also that the alleged lien or right of subrogation has not extended to or passed to him by the muniments of title shown.

From the view we take of this case, there is neither pleading nor proof that establishes any right in petitioner of subrogation, and no good purpose would be accomplished by reversing the judgment and remanding for another trial. We therefore set aside our previous judgment in reversing and rendering, and recall our original opinion, file this in lieu thereof, and grant defendant in error a rehearing. Upon reconsideration of the whole case we find no merit in any error assigned, and we affirm the judgment of the trial court.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes