SELSOR R. HAYGOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3240–63. Filed August 24, 1964.

Selsor R. Haygood, pro se.
*L. Lyle Walker*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in gift tax of petitioner for the year 1961 in the amount of $1,882.50.

The issue for decision is whether the gifts made by petitioner in the year 1961 include the entire value of certain property conveyed by petitioner to her sons in the form of a sale of the property for vendor's lien notes secured by deeds of trust.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner, an individual residing in Houston, Tex., filed a gift tax return for the calendar year 1961 with the district director of internal revenue at Austin, Tex.

Sometime prior to 1961, petitioner owned certain property which was condemned and as a result of the condemnation she received approximately $147,000 which upon advice of an accountant and an attorney she reinvested in similar property.

Petitioner also owned certain property in 1961 which she had owned for many years and which had not been acquired with the proceeds which she received from the condemnation of certain of her property.

After purchasing the property with the proceeds received upon condemnation of other property, petitioner decided that she wished to share her property with her two sons, and with this in view consulted an accountant with respect to the manner in which she could transfer property to her sons with the least amount of tax resulting from the transfer.

Subsequent to petitioner's conversation with the accountant, she intended to make an outright gift of certain property of a total value of $28,180 to her two sons, which property petitioner has referred to as rural property, and to make a gift of an interest of $3,000 in certain other property located in Harris County, Tex., which petitioner has referred to as city property, to each of her two sons in the year 1961. Petitioner consulted an attorney and in accordance with what he believed to be petitioner's wishes and her accountant's

advice to her, this attorney prepared deeds conveying a portion of the rural property outright to each of petitioner's sons. The deeds to the rural property so conveyed were delivered to petitioner's sons around December 29, 1961. Petitioner valued the rural property at $28,180 on her gift tax return for the year 1961. Respondent has accepted this valuation in his notice of deficiency and there is no issue in this case with respect to the conveyance of the rural property to petitioner's sons.

In accordance with what he likewise believed to be the advice petitioner received from her accountant and her intention of making an additional gift of a value of $3,000 to each of her sons for the year 1961 and for several years thereafter, the attorney also prepared the following documents: (1) Two deeds each containing a conveyance by petitioner of a portion of the city property to one of her sons subject to a vendor's lien; (2) two vendor's lien notes, one to be signed by each of petitioner's sons; and (3) two deeds of trust, one to the property being conveyed to each son to be executed by that son. On December 30, 1961, petitioner executed the two deeds and her sons executed the notes and deeds of trust. The property conveyed on December 30, 1961, by petitioner to her son C. Gerald Haygood by warranty deed with vendor's lien had a fair market value on that date of $16,500, and the property conveyed on December 30, 1961, by petitioner to her son F. Donald Haygood by warranty deed with vendor's lien had a fair market value on that date of $16,000. The warranty deed whereby petitioner conveyed property to her son C. Gerald Haygood recited in part as follows:

for and in consideration of the sum of Ten ($10.00) Dollars, and other valuable considerations, CASH TO ME IN HAND PAID, BY C. GERALD HAYGOOD, Grantee herein, the receipt of which is hereby acknowledged, and the further consideration of the sum of Sixteen Thousand Five Hundred ($16,500.00) Dollars, secured to be paid and evidenced by one promissory Vendor's Lien note, of even date herewith executed by the Grantee herein, payable to the order of the Grantor herein, in annual installments of Three Thousand ($3,000.00) Dollars, said note being non-interest bearing, the first such installment being due and payable on or before the 31st day of December, 1961, and continuing annually thereafter until said note is paid in full, said note acknowledging the Vendor's Lien herein retained to secure the payment thereof, and being additionally secured by Deed of Trust of even date herewith, * * *

Following this statement in the deed were the general terms of conveyance and description of the property, followed by the statement of general warranties. The concluding paragraph of the deed stated:

But it is expressly agreed and stipulated that the Vendor's Lien is retained against the above described property, premises and improvements, until the above described note, and all interest thereon are fully paid according to its face and tenor, effect and reading, when this deed shall become absolute.

The warranty deed whereby petitioner conveyed property to her son F. Donald Haygood carried the same provisions except the amount of the note was $16,000. The non-interest-bearing vendor's lien note payable to petitioner executed by each of her sons on December 30, 1961, as specified in the deed, provided for payment of the principal in annual installments of $3,000 with the first installment due on or before December 31, 1961, as specified in the deed. The deed of trust covering the property transferred by petitioner to each of her sons named the lawyer who drafted the papers for petitioner as trustee. Each such deed of trust conveyed the property to the trustee in trust to secure the payment of the vendor's lien note and provided that if payments were made as due the conveyance was null and void, but in case of default in payment the property was to be sold to satisfy the debt. The deeds whereby petitioner conveyed the city property to her sons were recorded, but neither of these deeds of trust was ever recorded. No payments were ever made on the note of either C. Gerald Haygood or F. Donald Haygood to petitioner. Petitioner did not intend at the time she took the notes from her sons to collect on these notes, but intended to forgive each $3,000 payment as it became due, thus making a gift of $3,000 to each of her sons at the time of such forgiveness. Petitioner's sons understood at the time the notes were executed that it was not petitioner's intention to collect the payments provided for in the notes, but that petitioner was having them sign the notes and deeds of trust for the property as a means of being able to give each of them a gift of $3,000 each year as the payments became due under the terms of the notes.

In 1961 petitioner's son F. Donald Haygood was a student at Rice University and was not employed except for some work over weekends at the laboratory of the university, at which work he earned $1 per hour. He did not have the money available to make a payment on December 31, 1961, of $3,000 on the note he executed. C. Gerald Haygood on December 31, 1961, was not in a financial position to make a payment of $3,000 on the note he executed.

Starting in 1962 F. Donald Haygood and C. Gerald Haygood each paid the property taxes on the property transferred to them by petitioner's deeds dated December 30, 1961.

The city property which was transferred by petitioner to her sons on December 30, 1961, was unimproved and non-income-producing property. Between December 30, 1961, and April 1964, the fair market value of this property decreased.

On December 31, 1961, petitioner executed a receipt for $3,000 to each of her sons stating thereon as follows: "A gift of payment due on or before 12/31/61 $3,000.00." Similar receipts were executed by

petitioner to each of her sons in January of each of the years 1962, 1963, and 1964.

On March 6, 1962, petitioner executed a partial release on part of the property conveyed on December 30, 1961, to C. Gerald Haygood, which read in part as follows:

WHEREAS, by deed dated December 30, 1961, and recorded in Volume 4593, Page 129, of the Deed Records of Harris County, Texas, Selsor R. Haygood, a feme sole, conveyed to C. Gerald Haygood two certain lots, tracts and parcels of land lying and being situated in the State of Texas and County of Harris, and one of such lots being more particularly described as follows: * * * and

WHEREAS, in said deed a Vendor's Lien was retained and a Deed of Trust was executed to secure payment of one certain promissory note in the sum of $16,500.00, executed by C. Gerald Haygood, and

WHEREAS, the sum of $6,000.00 has been credited as payment on said note to Selsor R. Haygood, the legal and equitable holder and owner of said note, and

WHEREAS, it is the desire of Selsor R. Haygood, a feme sole, to execute a partial release, and to release the above described tract:

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, That I, Selsor R. Haygood, a feme sole, in consideration of the premises, and the partial payment of said note, payment of which is hereby acknowledged, have this day, and by these presents, do hereby release, discharge and quitclaim unto the said C. Gerald Haygood, his heirs or assigns, all the right, title, interest and estate, in and to the property above described, which I have, or may be entitled to by virtue of the said Vendor's Lien and Deed of Trust, and do hereby declare the above described property fully released discharged from any and all liens created by virtue of said note and Deed of Trust above mentioned, but this release shall in no manner affect or impair the security of the said Selsor R. Haygood as to the remainder of said property securing the balance due on said indebtedness and note above referred to.

This partial release was recorded in the land records of Harris County, Tex.

Petitioner's gift tax return for the year 1961 was prepared by a certified public accountant who signed it under date of April 16, 1962. This return showed gifts to each of petitioner's sons on December 29, 1961, of $17,090, and had attached thereto a description of certain property, an undivided interest in which was given to each of her sons with a valuation of $14,090, and a statement of "forgiveness of debt" $3,000. On this return petitioner reported total gifts for the year of $34,180 and deducted two exclusions of $3,000 each or a total of $6,000, showing total included gifts of $28,180, and a specific exemption claimed of $28,180 with no taxable gifts for that year.

Petitioner's income tax return for the calendar year 1961 was prepared by the same accountant who prepared her gift tax return and was signed by this accountant on May 2, 1962, and was signed by petitioner on May 29, 1962.

On May 2, 1962, petitioner received a letter from the accountant

who prepared petitioner's gift and income tax returns for the year 1961, stating in part as follows:

This letter is in reply to your telephone conversation of last week. In that conversation, you asked that I recommend the method, from three possible solutions explained to you by Attorney Jim Miller, which you may use to undo the legal work which was performed in 1961 relative to some intended gifts to your sons.

It is suggested that you permit Mr. Miller to use the method which will return title to you by release of all liens as retained in deeds which have been filed for record.

Deeds of proportionate interest may be executed annually in accordance with your wishes after you have received title back in your name.

This is the type of conveyance I had in mind when I originally talked with your attorney. Undoubtedly he is not familiar enough with the tax consequences of a tax transaction to know that the method he used would cause you and your sons to pay unnecessary Federal Income Taxes.

I suggest that you permit Mr. Miller to effect this correction at the earliest possible date.

We are enclosing your Form #1040 for the calendar year 1961 which has been prepared without including any income from the 1961 real estate maneuvers, because we are sure they do not represent your original intent.

Please attach a copy of the extention [*sic*] which we understand was returned to you, sign, date and forward the original 1040 to the Internal Revenue Service, Austin, Texas.

Petitioner refused to follow the advice given her by an attorney to foreclose the vendor's liens and deeds of trust since she believed such foreclosure would adversely affect her sons' credit ratings.

Petitioner's income tax return for the year 1961 reported no income from the transfer of property in that year to her sons and receipt of the notes and deeds of trust from them. No such income was reported by petitioner on her 1962 income tax return. Petitioner is a cash basis taxpayer.

Respondent in his notice of deficiency mailed to petitioner on April 9, 1963, with respect to her gift tax return for the year 1961, asserted a gift tax liability of $2,587.50 on total taxable gifts of $32,500, determined by him as follows:

| | |
|---|---:|
| Total gifts of donor | $66, 680 |
| Less total exclusions | 6, 000 |
| Total included amount of gifts | 60, 680 |
| Specific exemptions | 28, 180 |
| Taxable gifts | 32, 500 |

Respondent gave the following explanation for these adjustments:

It is determined that in the year 1961 you made gifts of lot 3, block 17, Post Oak Manor, and lot 22, block 28, Ayrshire Addition, having a value of $16,500.00 to C. Gerald Haygood, and of lot 42 and part of lot 43, block 27, Ayrshire Addition, having a value of $16,000.00, to F. Donald Haygood.

Respondent now concedes that petitioner's total gifts were overstated by him and should have been $60,680 resulting in taxable gifts of $26,500 and a gift tax liability of $1,882.50.

OPINION

It is respondent's position that in addition to the property of a value of $28,180 given by petitioner to her sons in December 1961 with respect to which no issue is here involved, petitioner made total gifts in the year 1961 of property to her sons of $32,500. Respondent takes the position that since the value of the pieces of city property which petitioner deeded to her sons taking back a non-interest-bearing vendor's lien note in the amount of $16,500 from one son and a similar note in the amount of $16,000 from the other was $32,500, this represents the amount of petitioner's gifts to her sons since the notes executed by her sons and the liens given as security therefor were without substance. It is respondent's position that petitioner's sons owed her nothing for the property in 1961 and were vested with ownership thereof and that such gifts constituted transfers subject to tax.

It is petitioner's position that she gave the rural property valued at $28,180 to her sons in 1961, and in addition gave them $6,000 of the value of the city property in that year. It is eminently clear from the testimony that it was petitioner's intent to give only a $3,000 interest to each of her sons in the city property deeded to them in the year 1961. Had petitioner in 1961 deeded only a 3/16.5 interest to C. Gerald Haygood in the portion of the city property which she intended to give to him and only a 3/16 interest to F. Donald Haygood in the portion of the city property she intended to give to him, which was apparently the procedure her accountant intended for her to follow, and in subsequent years deeded similar interest until the entire property was transferred, respondent apparently would not question the transaction as being a gift of a value of only $3,000 to each son in the year 1961. In fact respondent's regulations specifically provide for such a transfer.[1]

It is respondent's position that petitioner transferred all of her interest in the property and in return therefor received nothing of value. Respondent does not consider there to be any substance to the

---

[1] Sec. 25.2511–1(e), Gift Tax Regs., provides as follows:

If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred. The tax is applicable, for example, to the transfer of an undivided half interest in property, or to the transfer of a life estate when the grantor retains the remainder interest, or vice versa. * * *

notes and deeds of trust signed by petitioner's sons. Respondent states that his position is supported by the provisions of section 2501 of the Internal Revenue Code of 1954 imposing a tax for years after 1954 on the transfer of property by gift, section 2511 providing that the tax shall apply whether the transfer is in trust or otherwise and whether the gift is direct or indirect, and section 2512 providing that where the gift is made in property the value of the property at the date of the gift shall be considered the amount of the gift and when property is transferred for less than an adequate and full consideration in money or money's worth, that the amount by which the value of the property exceeds the value of the consideration shall be deemed a gift.[2] Respondent contends that it is immaterial whether petitioner intended to give the entire value of the property in 1961 since she in that year actually did part with dominion and control over the property without receiving any valuable consideration in return therefor, relying on his regulations which he contends so state.[3]

---

[2] SEC. 2501. IMPOSITION OF TAX.

(a) GENERAL RULE.—For the calendar year 1955 and each calendar year thereafter a tax, computed as provided in section 2502, is hereby imposed on the transfer of property by gift during such calendar year by any individual, resident or nonresident, except transfers of intangible property by a nonresident not a citizen of the United States who was not engaged in business in the United States during such calendar year.

SEC. 2511. TRANSFERS IN GENERAL.

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

SEC. 2512. VALUATION OF GIFTS.

(a) If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

[All references are to the Internal Revenue Code of 1954 unless otherwise indicated.]

[3] Respondent relies upon the following regulations:

Sec. 25.2511–1(c) [Gift Tax Regs.]. The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. * * *

\*        \*        \*        \*        \*        \*        \*

(g)(1). Donative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer. The application of the tax is based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor. * * *

Sec. 25.2511–2(b). As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. * * *

Sec. 25.2512–8 [Gift Tax Regs.] * * *

Transfers reached by the gift tax are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration to the extent

Respondent cites in support of his position the case of *Minnie E. Deal*, 29 T.C. 730 (1958). *Minnie E. Deal* involved a conveyance by the taxpayer there involved of real property to a trust for the benefit of her four daughters. The property was conveyed to the trust unencumbered. On the same date that the real property was conveyed by the taxpayer in *Minnie E. Deal*, *supra*, to the trust, each of her four daughters gave her a non-interest-bearing note which they would have been, with one exception, financially able to pay. The taxpayer forgave a $3,000 portion of each note to each daughter in the year of the transfer of the property, and a similar portion of each note in the 2 subsequent years, and the remaining balance of the note in the following year. In *Minnie E. Deal*, *supra*, we stated at page 736:

> After carefully considering the record, we think that the notes executed by the daughters were not intended to be enforced and were not intended as consideration for the transfer by the petitioner, and that, in substance, the transfer of the property was by gift. * * *

In conclusion we stated:

> We have found, and held, that these notes were not given as a part of the purchase price of the property which petitioner conveyed to the trust and did not serve to reduce the amount of the gift. Therefore, even if we assume, as petitioner argues, that the daughters were legally liable on the notes to petitioner, that fact has no effect on the question we have here to decide. The Commissioner has not included as part of the gifts made by petitioner in 1952 the cancellation of the 4 notes for $3,000 each which had been executed by the daughters to petitioner. Since no such gifts were included by respondent in his determination of the deficiency, the cancellation cannot be made the basis for the exclusions in the amount of $12,000 which petitioner claimed on her return and which she still contends should be granted.

The *Minnie E. Deal* case is clearly distinguishable on its facts from the instant case. Here the notes were vendor's lien notes given for the property. Clearly as a matter of law, they would have been enforceable and respondent does not contend otherwise. Respondent's position is, and the record shows, that it was not petitioner's intention to enforce payment of the notes. Respondent points out that petitioner's sons were not able to pay the $3,000 payments on the notes due on December 31, 1961, on that date since they did not have the funds with which to make the payments. There is a stipulated fact that the sons were not financially able to make the $3,000 payments due on December 31, 1961. This stipulation must imply without considering the rural property given to petitioner's sons the preceding day since this property had a value of $28,180. However, the ability of the sons to

---

that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. * * *

pay $3,000 on December 31, 1961, is academic since it was petitioner's intention to and she did forgive the payment due on that day. It is stipulated that at the time these notes were given, the fair market value of the properties conveyed was $16,000 and $16,500, respectively. In view of the agreed value of the properties, the deeds of trust to the properties further securing the vendor's lien notes would obviously have some value.

Respondent argues that under Texas law a lien never imports more than security and confers no title to or in the property, citing a number of Texas cases including *Vaughan* v. *John Hancock Mut. Life Ins. Co.*, 61 S.W. 2d 189 (Tex. Civ. App. 1933), and *Pope* v. *Witherspoon*, 231 S.W. 837 (Tex. Civ. App. 1921). In *Vaughan* v. *John Hancock Mut. Life Ins. Co.*, *supra*, the court held that since the written contract clearly provided for a lien on certain property, evidence that the parties intended that the property be taken in payment was properly excluded by the trial court since lien "means a right to enforce a charge upon property of another for the payment or satisfaction of a claim." *Pope* v. *Witherspoon*, *supra*, insofar as here pertinent merely holds that a lienholder does not acquire title to property without foreclosure. Petitioner certainly did not retain title to the city property she conveyed to her sons by retaining a lien on the property. However, nothing in any of the cases cited by respondent questions the validity of a vendor's lien note provided for in a written instrument or the right to provide for a vendor's lien being retained as a guarantee of payment in a deed. Insofar as the cases cited by respondent deal with this question, they support the validity of such a written agreement irrespective of the construction placed by the parties on their obligations.

Respondent argues that since it was not petitioner's intent to collect the notes from her sons, there existed no debt and that without a debt there can be no lien. Respondent relies on *United States* v. *Phillips*, 267 F. 2d 374 (C.A. 5, 1950), holding that because a tax lien existed on certain property, the Government was not entitled to collect penalties for nonpayment of delinquent Federal withholding taxes which by statute in a bankruptcy proceeding it would not be entitled to collect absent the lien. In so holding the court stated at page 377:

The term "lien", as generally used, is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation. It is distinct from the obligation which it secures. 53 C.J.S. Liens § 1, p. 826; Bouvier's Law Dict., Rawle's Rev. 1978. In the absence of an obligation to be secured there can be no lien. In re Hamburger Distillery, Inc., 3 Cir., 1940, 115 F. 2d 84. A "tax lien" is merely a security established by statute of which the taxing authority may avail itself in the event of a default in payment. City of St. Petersburg v. Fiore, 160 Fla. 106, 33 So 2d 852. The statutory enactment[4]

that the amount of an unpaid tax shall be a lien is, we think, nothing but a shorthand provision creating a tax lien to secure the obligation of the unpaid tax. The penalty is an obligation of the defaulting taxpayer. The character of the obligation as a penalty is not changed, as we view the question, when it becomes a secured obligation. * * *   [Footnote omitted.]

If the notes of petitioner's sons were as a matter of law unenforceable, there might be validity to respondent's argument that there was no debt secured by the vendor's liens and deeds of trust which would be collectible. However, under the facts in this case where the very deeds conveying the properties recited that vendor's lien notes were being given in consideration therefor, the evidence certainly supports the fact that the notes did create enforceable indebtednesses even though petitioner had no intention of collecting the debts but did intend to forgive each payment as it became due. See *Nelson Story III*, 38 T.C. 936 (1962).

Respondent in arguing that no weight should be given to the fact that petitioner only intended to give $3,000 a year each to her sons of the value of the property, relies not only on his regulations but also on *Commissioner* v. *Wemyss*, 324 U.S. 303 (1944). In *Commissioner* v. *Wemyss*, the transfer involved was in accordance with a premarriage contract whereby the taxpayer proposed to compensate his fiancee for loss of life income under an existing trust which would terminate upon her remarriage and thereafter be payable to her son by a prior marriage. The Court recognized that the promise of marriage would be consideration in a common law sense for the transfer of the property as also might the relinquishment of income from the existing trust by the taxpayer's fiancee, and that because of these facts, a donative intent essential to constitute a gift as a matter of common law might not exist. In disposing of this contention, the Court stated at page 306:

Sections 501 and 503 are not disparate provisions. Congress directed them to the same purpose, and they should not be separated in application. Had Congress taxed "gifts" *simpliciter*, it would be appropriate to assume that the term was used in its colloquial sense, and a search for "donative intent" would be indicated. But Congress intended to use the term "gifts" in its broadest and most comprehensive sense. H. Rep. No. 708, 72d Cong., 1st Sess., p. 27; S. Rep. No. 665, 72d Cong., 1st Sess., p. 39; cf. *Smith* v. *Shaughnessy*, 318 U.S. 176; *Robinette* v. *Helvering*, 318 U.S. 184. Congress chose not to require an ascertainment of what too often is an elusive state of mind. For purposes of the gift tax it not only dispensed with the test of "donative intent." It formulated a much more workable external test, that where "property is transferred for less than an adequate and full consideration in money or money's worth," the excess in such money value "shall, for the purpose of the tax imposed by this title, be deemed a gift * * *." And Treasury Regulations have emphasized that common law considerations were not embodied in the gift tax.[1]  [Footnote omitted.]

In the instant case if donative intent were the criterion our question would be easily solved for the record is amply clear that petitioner intended to donate only $3,000 per year of the property here involved to each of her sons until such time as the full value had been given to them. However, since this not the criterion, it is necessary to look to the property that passed to petitioner in return for the real property transferred to see if the amount of petitioner's gifts to her sons in 1961 of the city property exceeded the $6,000 she reported. See *Estate of Sarah A. Bergan*, 1 T.C. 543 (1943). In *Estate of Koert Bartman*, 10 T.C. 1073 (1948), we recognized that the consideration for the transfer of property by a taxpayer to each of his three children was less than the value of the property transferred. In that case we held that the transfers were for inadequate consideration, and therefore to the extent the value of the property transferred exceeded the value of the consideration given by the children, the taxpayer had made a gift within the meaning of the statute. We did, however, recognize that the agreements to pay annuities and notes were given by the children to the parent in consideration for the property. In the *Bartman* case the taxpayer had contended that none of the gifts was sufficiently complete to occasion the incidence of gift tax because by means of the annuity obligations, the taxpayer retained a right of invasion of the gift. We did not sustain that contention. Likewise, in the instant case we agree with respondent that the gift of the land, insofar as its value exceeded the consideration received by petitioner therefor, was completed in the year 1961. The existence of the vendor's lien notes and deeds of trust would not cause the transfer to be so incomplete as not to be a consummated gift at the time of the transfer to the extent the value of the property exceeded the value of the consideration received therefor. Cf. *Mable G. Adams*, 44 B.T.A. 1091, 1093 (1940), and cases there cited.

We hold that the value of the property transferred by petitioner did not exceed the value of the vendor's lien notes and deeds of trust received in return therefor by more than the $3,000 in the case of each son, which amounts petitioner has reported as gifts in the year 1961.

Respondent makes some point of the fact that petitioner did not report any gain or loss from sales of the properties transferred to her sons in either her 1961 or 1962 income tax return. Petitioner's income tax for neither of these years is before us, and therefore we express no opinion as to the correctness of petitioner's action in this regard. We do hold under the facts of this case that petitioner correctly reported the total gifts made by her to her sons in the year 1961.

*Decision will be entered for petitioner.*