Morton E. **COLE** et al., Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent-Appellee.

No. 837, Docket 73-1253.

United States Court of Appeals, Second Circuit.

Argued May 30, 1973.

Decided July 17, 1973.

Morton E. Cole, Hartford, Conn. (Cole & Cole, Hartford, Conn.), for petitioners-appellants.

Joseph M. McManus, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Attys., Dept. of Justice, of counsel), for respondent-appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

This appeal is from decisions of the Tax Court, Leo H. Irwin, *Judge*, entered October 25, 1972, determining liabilities in taxpayers' income tax returns for the years 1965 through 1968 in the total amount of $6,184.29. (See 31 T.C.M. 870 (1972)). Taxpayers Cyril Cole and Jean E. Cole, husband and wife, were found liable for a tax deficiency of $4,257.07; taxpayer Morton Cole, brother of Cyril, was found liable for a deficiency of $1927.22. Hereinafter, the term "taxpayers" will refer to Morton and Cyril Cole.

### I. The Facts

Taxpayers are brothers who for many years have been partners in the law firm of Cole & Cole of Hartford, Connecticut. Between 1937 and October, 1949, Beatrice F. Cole, a sister of taxpayers, was employed by Cole & Cole as office manager.

On January 12, 1946, Beatrice suffered a heart attack while at work. Her doctor diagnosed her condition as "essential hypertension" brought on by the stress of her employment and recommended that she take a leave of absence from her job. Beatrice took an extended trip to Cuba and returned to work in the spring of 1946 with her condition greatly improved.

On September 20, 1949, and October 3, 1949, Beatrice again suffered heart attacks while at work. Her doctor attributed these attacks to the pressures of

her employment and recommended that she stop working completely, since he believed that her hypertension would continue and would not improve. The doctor also suggested that Beatrice take extended trips to keep her mind from the tensions of her job and that she take along on her trips a traveling companion who could summon help if she became incapacitated.

Strictly following her doctor's advice, Beatrice did not work after October 3, 1949, at which time she was fifty-six years old. In addition, since October, 1949, Beatrice has taken numerous trips away from Connecticut accompanied by a traveling companion, her sister Ethel Cole.

At the time Beatrice suffered her heart attacks and left her employment, the Cole & Cole law partnership did not carry workmen's compensation insurance and had not established a self-insurance plan. Taxpayers and the Commissioner of Internal Revenue agree that Beatrice was rendered totally incapacitated by her heart attacks and that, under Connecticut law, she became entitled to receive from Cole & Cole direct payments of up to $32 per week plus reimburse-

ment for all of her related medical expenses.[1]

Pursuant to statute and agreement, from 1951 through 1958 and again from 1961 through 1968 (the period from 1958 to 1961 having been covered by special agreement), taxpayers paid to Beatrice weekly compensation payments and considerable sums for her medical expenses. Included as medical expenses during the years at issue are the following amounts expended for travel expenses of Beatrice and her companion, Ethel Cole: 1965—$6,217.56; 1966—$2,078.93; 1967—$4,962.16; 1968—$1,895.38; a further $2,749.53, deemed "unidentified" by the Tax Court was also expended in 1968.[2] This item was stipulated by the parties to have been expended by Beatrice for meals and lodging during her 1968 travels. These travel-related expenses total $17,903.56. During these same years taxpayers paid to Beatrice the following amounts as weekly compensation payments: 1965—52 weeks at $30.00=$1560.; 1966—27.5 weeks at $30.=$825.; 1967—75 weeks (probably to adjust for payments covering only 27.5 weeks in 1966) at $30. =$2,250.; 1968—52 weeks at $30=$1,-560. These payments total $6195.

---

1. At the time of Beatrice's heart attacks in September and October, 1949, Section 7430 of the Connecticut General Statutes provided as follows:

Sec. 7430. Compensation for total incapacity. If any injury for which compensation is provided under the provisions of this chapter shall result in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to half of his average weekly earnings at the time of injury; but the compensation shall in no case be more than thirty-two dollars or less than nine dollars weekly; and such compensation shall not continue longer than the period of total incapacity, or in any event longer than six hundred and twenty-four weeks. The following-described injuries of any person shall be considered as causing total incapacity and compensation shall be paid accordingly: (a) Total and permanent loss of sight in both eyes, or the reduction to one-tenth or less of normal vision with glasses; (b)

the loss of both feet at or above the ankle; (c) the loss of both hands at or above the wrist; (d) the loss of one foot at or above the ankle and one hand at or above the wrist; (e) any injury resulting in permanent and complete paralysis of the legs or arms or of one leg and one arm; (f) any injury resulting in incurable imbecility or mental illness; but an employee who shall have suffered the loss or loss of use of one of the members of his body, or of part of one of the members of his body, or the reduction of vision in one eye to one-tenth or less of normal vision with glasses, shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous incapacity.

2. In addition to these travel expenses, the stipulation of facts lists only two other items under medical expenses. These were two medical examinations, one in 1965 and one in 1968, which together totaled $53.00.

Taxpayers considered the above travel expenses and weekly compensation payments to have been required by the Connecticut Workmen's Compensation Law and they therefore treated them as ordinary and necessary expenses of their law partnership deductible under Section 162 of the Internal Revenue Code of 1954.[3]

The Tax Court upheld the Commissioner's determination that the amounts paid for Beatrice's travels should not have been deducted as ordinary and necessary business expenses and further found that no deduction could be allowed for the weekly compensation payments paid to Beatrice after September 18, 1965, the date on which the 624 week limitation contained in the Connecticut statute requiring such payments expired.[4] We affirm the decision of the Tax Court.

## II. Travel Expenses

Taxpayers assert that the travel expenses which Beatrice and her sister incurred over the four years in question were properly deductible as ordinary and necessary expenses of the law partnership within the meaning of Section 162 I.R.C. of 1954, because those expenses were allegedly mandated by the Connecticut Workmen's Compensation Law. The pertinent statutory language reads thus:

Any employee who shall have sustained an injury in the course of his employment shall forthwith notify his employer, or some person representing him, of such injury; * * *.

The employer, as soon as he shall have knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee, and in addition shall furnish such medical and surgical aid or hospital or nursing service as such physician or surgeon shall deem reasonable or necessary. * * *. Conn.Gen'l.Stats.. § 7426 (1949).

At trial the testimony of the physician who treated Beatrice during the years in question was offered to establish that frequent, extended trips abroad had been prescribed as part of her treatment. This testimony revealed that the doctor had merely recommended "if possible rest, trips, California or abroad". We agree with the Tax Court that by this testimony taxpayers have failed to show that these travel payments constituted specifically prescribed treatment for Beatrice's hypertension.

Taxpayers argue, however, that they did not rely on their own interpretation of Connecticut law (they have conducted an active workmen's compensation practice for many years), but rather they consulted a Commissioner of Workmen's Compensation who gave them a written opinion that as employers, taxpayers were liable for Beatrice's medical expenses and that the travel expenses were properly included as medical expenses. Of course, no opinion of such Commissioner can bind this Court as to what is an ordinary and necessary expense under Section 162. On this question too, we agree with the Tax Court that taxpayers have simply failed to prove that Beatrice's extended travels were medically required so that they were obligated to pay them under the Connecticut statute. In addition to their claim that the payments of travel expenses qualify as deductions under Section 162 because they were payments required by Connecticut law, taxpayers have made no other arguments to support this deduction. This is not surprising in light of this Circuit's test for determining whether expenses are ordinary and necessary under Section 162.

---

3. The Internal Revenue Code of 1954 provides as follows:
   Section 162. Trade or business expenses
   (a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.

   \*     \*     \*     \*     \*

4. See note 1 *supra.*

As expressed in B. Forman Co., Inc. v. Commissioner, 453 F.2d 1144 (2d Cir. 1972) that test is "whether a hard-headed businessman, under the circumstances, would have incurred the expense". 453 F.2d at 1160.

We find that the Tax Court did not err in holding that by paying Beatrice's and her sister's travel expenses between 1964 and 1968 taxpayers were not entitled to a deduction for an ordinary and necessary business expense.

### III. The Weekly Compensation Payments

When Beatrice became totally incapacitated in October, 1949, Connecticut's Workmen's Compensation Law provided that her employer was obligated to pay her up to $32 per week for a total of 624 weeks. On February 1, 1951, Cole & Cole entered into an "Agreement as to Compensation" with Beatrice which provided that the partnership would pay her $30 per week plus medical expenses. On February 27, 1958, a new agreement was executed which provided for the settling "once and for all" of the taxpayers' liability to Beatrice. This agreement included the following provision:

4. (b) Whereas the Respondent desires to terminate and settle once and for all its legal liability to the claimant for the payment of compensation and medical expenses and for payment of past and future compensation for the total sum of $5,000, together with the Respondent's promise and agreement to pay all travel and other expenses of the Employee in seeking needed rest or change of locale, climate, or environment to treat or alleviate her condition, including the like expenses of any accompanying nurse or travelling companion, until September 19, 1961, which amount or expense will be considerably less than the exposure of the Respondent to the Claimant.

This award by stipulation was "accepted" on March 3, 1958, by the Connecticut compensation commissioner for the district in which Beatrice resided.

On August 25, 1961, an "Agreement to Re-open, Clarify and Convert Award by Stipulation" (referring to the February 27, 1958 award) was entered into by taxpayers and their sister. This agreement provided in part:

14. Furthermore, the Respondent-Employer is presently obligated to pay full weekly compensation of $32 for the balance of the statutory period of six hundred twenty-four (624) weeks, which balance starting on August 25, 1961 amounts to two hundred eleven and one-half (211.5) weeks of additional compensation.

On August 29, 1961, this agreement was also approved by the appropriate compensation commissioner.

Despite the clear language of the statute limiting weekly compensation payments to 624 weeks, and despite the fact that the 1961 agreement specifically incorporated this limitation, taxpayers made similar payments after September 18, 1965, the date of the expiration of the statutory 624 week period. Deductions under Section 162 were taken by taxpayers for payments made after the 624 weeks.

In the Tax Court and in their initial brief on appeal taxpayers argued that these weekly payments were properly deducted because the Connecticut statute did not limit such payments to 624 weeks. Taxpayers argued that this limitation referred only to certain itemized injuries included in the sentence following the 624 week limitation and was not intended to be applied to the disability which afflicted Beatrice.[5] This contention is wholly without merit and was properly rejected by the Tax Court.

In their reply brief taxpayers make a new argument (not presented to the Tax Court) in support of their position that weekly compensation payments are required to be made by an employer so long as the condition of total incapac-

---

5. See text of § 7430 in note 1 supra.

ity for work continues. This argument is based upon the following statute enacted in 1967 by the Connecticut Legislature.

> Compensation under agreements or awards effected prior to
> October 1, 1953

> Any person who received compensation for total incapacity under a workmen's compensation agreement or award effected prior to October 1, 1953, shall receive such compensation as is authorized under Section 31–307 [6] or for not longer than the period of total incapacity, and shall be paid as provided by subsection (b) of Section 31–307a * * *. Conn.Gen'l. Stats. § 31–307c (1972); Conn.Public Acts 842, § 30 (1967).

Taxpayers now urge upon this Court that this statute, enacted in 1967, mandated payments which were made to Beatrice after September 18, 1965. Taxpayers' August, 1961, agreement with Beatrice contractually obligated them to make 211.5 weekly compensation payments to Beatrice. Prior to incurring this contractual obligation, taxpayers had secured from Beatrice a final release from further compensation payments by making a lump sum payment of $5000 as provided in the February, 1958, agreement *supra*. Because the Commissioner has not appealed the Tax Court's decision to allow payments made under the 1961 agreement, we do not consider whether such payments made after a final release are in fact ordinary and necessary. It is well settled, however, that such payments are not ordinary and necessary simply because they are contractually required. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 594, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).[7] Furthermore it is clear, we think, that even if payments made within the 624 week period were correctly allowed as deductions, payments made to Beatrice after September 18, 1965, and before the above-quoted statute was passed in 1967 are not retroactively mandated by that Act so that they become ordinary and necessary within the meaning of Section 162.

As to payments to Beatrice after Connecticut law was changed, we find that these, too, were not ordinary and necessary expenses of the Cole & Cole partnership. Payments made after the 1967 statute was passed were made by taxpayers despite the fact that they had received a full release from their obligation to make such payments in the 1958 agreement. In light of the "hard-headed businessman" test for ordinary and necessary expenses, *B. Forman Co.*, *supra*, we find that taxpayers were not entitled to such a deduction. The statute which taxpayers now cite does not specifically deal with cases of total incapacity in which "final releases" have been procured at considerable cost. We do not believe that a hard-headed businessman would so eagerly have recommenced these payments without some contest in the courts over the liability to make these payments. Furthermore, from the late date on which this argument was first made in this case, we conclude that

---

6. § 31–307. Compensation for total incapacity

If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31–309 for the year in which the injury occurred, or less than twenty dollars weekly; and such compensation shall not continue longer than the period of total incapacity. * * *

7. Furthermore, the fact that both the 1958 and the 1961 agreements were "approved" by the Commissioner of Workmen's Compensation has no legal significance. Testimony at trial revealed that so long as such agreements give the employees at least the statutory minimum award, they are "approved". Clearly, such approval does not imply that the payments provided for in the award are mandated by Connecticut's Workmen's Compensation Law.

taxpayers did not discover the particular statute which they now claim requires these payments until very recently. Since they did not rely on this statute during 1967 and 1968, we are convinced that the weekly compensation payments made during those years should not be deducted by taxpayers as ordinary and necessary business expenses.

The decision of the Tax Court is affirmed.