George B. ROSENFELD and Harriet Rosenfeld, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 998, Docket 82–4176.

United States Court of Appeals, Second Circuit.

Argued March 10, 1983.

Decided May 2, 1983.

MacMahon, District Judge, sitting by designation, dissented and filed opinion.

Jonathan S. Cohen, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Gayle P. Miller, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., of counsel), for appellant.

John P. Dee, Buffalo, N.Y. (Cohen, Swados, Wright, Haniflin, Bradford & Brett, Buffalo, N.Y., of counsel), for appellees.

Before KAUFMAN and KEARSE, Circuit Judges, and MacMAHON, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

For as long as governments have taxed their citizens, individuals have sought to minimize their tax burdens. On occasion, members of the public have employed elaborate devices to defer taxes or shift income to their associates and relatives in lower tax brackets. When such schemes completely lack legitimate purposes and affect no real economic or beneficial interests, courts have not hesitated to pierce the formal arrangements and examine the substance of the underlying transaction. At the same time, judges have recognized that taxpayers are generally free to order their investment and business decisions to reduce their tax liability. As Judge Learned Hand eloquently noted, "one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." *Helvering v. Gregory,* 69 F.2d 809, 810 (2d Cir.1934), *aff'd,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

This case calls upon us to draw, once again, the fine line between valid business transactions and illegitimate tax avoidance ploys. We are required to determine, as a matter of first impression within this Circuit, whether a taxpayer who gives property to his children in trust may lease back that property for use as a professional office, and deduct the rent payments from his income pursuant to I.R.C. § 162(a)(3). Because we believe these transactions involved real transfers of economic interests, and for other reasons set forth below, we affirm the Tax Court's order allowing the rent deductions.

I

Since the underlying facts are important to the resolution of this dispute, we set them forth in some detail.

In 1963 George B. Rosenfeld,[1] a doctor practicing in Cheektowaga, New York, purchased a parcel of land in that town. Shortly thereafter, Rosenfeld arranged for a building to be constructed on the property, intended for use as a medical office. Since the completion of the building in 1964, Rosenfeld has been its sole occupant.

In 1969 Rosenfeld decided to establish a trust for the benefit of his three daughters, and to transfer the land and medical office

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Harriet Rosenfeld is also a party to this action because she filed a joint tax return with her husband. For simplicity we refer to both Dr. and Mrs. Rosenfeld as "Rosenfeld" or "taxpayer."

to the trust. Prior to executing this transaction, he arranged for an independent firm, Grant Appraisal & Research Corporation, to value the property. After the appraiser concluded that the fair rental of the property was $14,000 per year, Rosenfeld created an irrevocable trust, and arranged for Samuel Goldman, his accountant, and Ira Powsner, his attorney, to act as trustees. Pursuant to the terms of the agreement, the trustees were responsible for collecting income produced by the property and investing it, until the termination of the trust, at which time the accumulated proceeds would be distributed to the beneficiaries.

The trust was to have a term of 10½ years, and Rosenfeld retained a reversionary interest in the corpus. During the period of the trust, he remained liable for the mortgage payments and general upkeep of the property. The trustees were responsible for the payment of real estate taxes. Rosenfeld had no right to alter the terms of the trust, and was legally obligated to fulfill its requirements.

The trust agreement was executed on July 1, 1969, and on that same date, Rosenfeld entered into a lease with the trustees. Rosenfeld agreed to rent the medical property for the entire term of the trust for annual payments of $14,000, the amount fixed by the appraisers as fair and reasonable. The lease also required Rosenfeld to pay utility and other incidental expenses, and granted him the right to construct additions to the building at his expense.

In 1973, Rosenfeld decided to transfer his reversionary interest in the trust property to his wife. Two years later, appellee and the trustees agreed upon further changes and amended the trust to extend its termination date for 5 years, from 1980 to 1985. Also in 1975 the lease agreement was modified to increase the annual rent to $15,000, and alter the rental term to one year, renewable for an additional year at Rosenfeld's option.

We now approach the core of this dispute. In his tax returns for 1974 and 1975, Rosenfeld claimed a deduction for his rent payments to the trust pursuant to I.R.C. § 162(a)(3), which allows a taxpayer to deduct from his income "ordinary and necessary" rent expenses incurred as a condition of the taxpayer's trade or business. The trust filed fiduciary returns, and reported the amounts paid by appellee as income. The trust also claimed deductions for real estate taxes and depreciation on the property. After auditing Rosenfeld's returns, the Commissioner disallowed the deductions for the rent expenses in 1974 and 1975. In October 1977, appellee received a statutory notice of deficiency, and, as one would anticipate under these circumstances, he challenged the Commissioner's assessment.

Eventually the case was heard by Judge Simpson, who concluded the rent payments were properly deducted by the taxpayer pursuant to § 162(a)(3). Accordingly, the judge recalculated the deficiencies, and for the years 1974 and 1975 found Rosenfeld liable for items other than the rent deductions. Rosenfeld does not challenge these assessments. The Commissioner, however, filed a notice of appeal, questioning the Tax Court's rejection of the deficiencies relating to the rent deductions.

## II

While, as we have noted, this appeal raises a question of first impression in this Circuit, we are not writing on a *tabula rasa.* The issue on this appeal has not suffered from lack of consideration by various tribunals. The Tax Court has been confronted with this problem on numerous occasions, and several other Circuits have also expressed their views. These authorities, however, have been divided on the proper tax treatment of a claimed deduction in a gift-leaseback situation. Generally the Tax Court's recent decisions have allowed deductions in similar situations.[2] But we find the Courts of Appeals have split on this issue. The Third, Seventh, Eighth and

2. *See, e.g., Oakes v. Commissioner,* 44 T.C. 524 (1965); *Lerner v. Commissioner,* 71 T.C. 290 (1978); *May v. Commissioner,* 76 T.C. 7 (1981), *appeal pending* (9th Cir. No. 82–7658).

Ninth Circuits have held in favor of the taxpayer,[3] while the Fourth and Fifth Circuits have adopted the Commissioner's view.[4] It is against this background of divergent views that we are called upon to exercise our Solomonic powers and resolve the instant dispute, by determining which of the conclusions reached among the Circuits accords with the law, and, indeed, is the fairer course to follow.

We commence our consideration by looking to the language of the statute. On its face it appears to grant a taxpayer the right to deduct his rent expenses, even where he previously owned the leased property. In relevant part, I.R.C. § 162(a) provides:

> There shall be. allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
>
> *　*　*　*　*　*
>
> (3) rentals and other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

But the Commissioner claims Rosenfeld has no right to a deduction pursuant to this provision, because he voluntarily entered into the arrangement which created the need to pay rent. Appellant urges us to adopt the view that the gift-leaseback arrangement is a sham and the taxpayer should be prevented from taking advantage of his self-created rent liability to reduce his taxes.

■ In considering the validity of a claimed deduction in a gift-leaseback situation, we have been given some guidance by the Tax Court which has devised a four-prong test. To receive the deduction, "1)

[t]he grantor must not retain substantially the same control over the property that he had before he made the gift, 2) [t]he leaseback should normally be in writing and must require the payment of a reasonable rent, 3) [t]he leaseback (as distinguished from the gift) must have a bona fide business purpose, [and] 4) [t]he grantor must not possess a disqualifying 'equity' in the property within the meaning of section 162(a)(3)." *May v. Commissioner,* 76 T.C. 7, 13 (1981), *appeal pending* (9th Cir. No. 82–7658); *see Mathews v. Commissioner,* 61 T.C. 12 (1973), *rev'd,* 520 F.2d 323 (5th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976); *see also Quinlivan v. Commissioner,* 599 F.2d 269, 272 (8th Cir.), *cert. denied,* 444 U.S. 996, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979).

For reasons stated below, we believe this test is an appropriate measure of the legitimacy of a deduction in a gift-leaseback situation. The Commissioner has conceded that the lease was properly executed and does not challenge the reasonableness of the rent. Appellant, however, asserts that Rosenfeld did not satisfy the first element of the *May* test because, in fact, he retained control of the property. The Commissioner also challenges the third prong of this test, contending that the gift and leaseback considered together must have a demonstrable bona fide business purpose. *See Perry v. United States,* 520 F.2d 235 (4th Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *Van Zandt v. Commissioner,* 341 F.2d 440 (5th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965).

Judge Simpson's opinion is enlightening. He found the first part of the *May* test was met, because Rosenfeld surrendered control over the property he deeded to the trust. Pursuant to the terms of the trust agree-

**3.** *See, e.g., Brown v. Commissioner,* 180 F.2d 926 (3d Cir.), *cert. denied,* 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950); *Skemp v. Commissioner,* 168 F.2d 598 (7th Cir.1948); *Quinlivan v. Commissioner,* 599 F.2d 269 (8th Cir.), *cert. denied,* 444 U.S. 996, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); *Brooke v. United States,* 468 F.2d 1155 (9th Cir.1972).

**4.** *See, e.g., Perry v. United States,* 520 F.2d 235 (4th Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *Van Zandt v. Commissioner,* 341 F.2d 440 (5th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965).

ment, the trustees were authorized to mortgage or sell the property, grant easements, and exercise other powers traditionally associated with ownership. Moreover, Rosenfeld was obligated to pay rent, and although the initial lease granted a right of occupancy for the entire term of the trust, the amended lease was only for a single year, renewable for one additional year. Rosenfeld was also prohibited from subletting the property or assigning his rights under the lease.

In addition, the Tax Court found the trustees were independent, and appellant has presented nothing which would persuade us to reject this finding. In some cases in which a taxpayer has been prevented from taking a rent deduction, the trustees were not truly independent, and the decisions in those cases are clearly distinguishable on that basis. *See, e.g., Van Zandt v. Commissioner, supra* (grantor is also trustee); *see also White v. Fitzpatrick,* 193 F.2d 398, 402 n. 2 (2d Cir.1951) ("the factor of independent trusteeship is crucial"), *cert. denied,* 343 U.S. 928, 72 S.Ct. 762, 96 L.Ed. 1338 (1952); *Quinlivan v. Commissioner, supra,* 599 F.2d at 273 n. 4 (distinguishing *Van Zandt* and *Perry v. United States, supra,* because of the lack of independence of the trustees in those cases). We are of the view that in this case the broad grants of power to the trustees, the concomitant diminution of Rosenfeld's rights, and the actual independence of the trustees, adequately satisfies the first element of the Tax Court's test.

The Commissioner also claims, as we have indicated, that the entire transaction, and not merely the leaseback, must be imbued with a valid business purpose. But we are of the view that such a requirement is too harsh for it would lead inevitably to a denial of the rent deduction, despite its clear business purpose, because the gift of the land was not *ipso facto* a business transaction. The Commissioner's argument calls for a test which is overly stringent, particularly in the circumstances here. Many financial decisions are motivated by the prospect of legitimate tax savings, rather than

business concerns, and we have already expressed our agreement with Judge Learned Hand's view that a transaction which is otherwise legitimate, is not unlawful merely because an individual seeks to minimize the tax consequences of his activities. *See Helvering v. Gregory, supra; Gilbert v. Commissioner,* 248 F.2d 399, 411 (2d Cir. 1957) (L. Hand dissenting).

We have frequently noted in our decisions that the propriety of conduct should be determined by examining all that occurred. *White v. Fitzpatrick, supra.* This does not, of course, imply that we should blindly apply the business purpose standard (or some other test) without consideration of other factors which bear on the case. To illustrate, Congress has explicitly considered the gift aspect of this transaction which the Commissioner finds objectionable. The so-called Clifford trust provisions of the Internal Revenue Code, 26 U.S.C. §§ 671–678, specifically address the creation of short-term trusts, and impose minimum requirements which must be satisfied before the trust income can be taxed to the beneficial owner. While these provisions are not dispositive of the issue whether payments to the trust may be deducted, *see* S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in,* 1954 U.S.Code Cong. & Ad.News 4621, 5006; 26 C.F.R. § 1.671–1(c) (1982), we cannot blind ourselves to the interplay between these provisions and § 162(a)(3). *Quinlivan v. Commissioner, supra,* 599 F.2d at 273–74; *Lerner v. Commissioner,* 71 T.C. 290, 301–02 (1978).

The Commissioner's position that both the trust and the leaseback must have a legitimate business purpose, ignores the Congressional policy inherent in the Clifford sections. It is difficult to imagine a case in which the establishment of such a trust could be viewed as furthering a taxpayer's business objectives. Quite simply, Clifford trusts are income-shifting devices designed to shelter income, and we cannot lightly overlook the legislative determination that trusts which comply with §§ 671-

678 are legitimate.[5] Accepting the Commissioner's view, as noted in *Quinlivan v. Commissioner, supra*, 599 F.2d at 274, "would produce a benefit only in cases where investment property—not used in the grantor's trade or business—is placed in trust. Persons whose assets consist largely of business property would be excluded from a tax benefit clearly provided by Congress."

■ Accordingly, we decline appellant's invitation to adopt a business purpose standard of review. Rather, we believe our inquiry should focus on whether there has been a change in the economic interests of the relevant parties. If their legal rights and beneficial interests have changed, there is no basis for labeling a transaction a "sham" and ignoring it for tax purposes. Indeed, our prior decisions have indicated that this is the relevant inquiry. *Gilbert v. Commissioner, supra*, 248 F.2d at 411–12 (L. Hand, dissenting); *United States v. Ingredient Technology Corp.*, slip op. at 1027, 1040 (2d Cir. Jan. 5, 1983); *see also Frank Lyon Co. v. United States*, 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978); *Brooke v. United States*, 468 F.2d 1155, 1158 (9th Cir. 1972).

■ It is readily apparent here that there has been a real change in the legal rights and interests of the parties. As we noted, the trustees were granted broad powers over the corpus of the trust, which necessarily reduced Rosenfeld's authority. Moreover, during the years in issue, Rosenfeld had no present or future interest in the property. When he deeded his reversion in 1973, he retained no legal or equitable right to the trust property. *See White v. Fitzpatrick, supra*, 193 F.2d at 401 (court distinguishes *Skemp v. Commissioner, supra*, and

*Brown v. Commissioner*, 180 F.2d 926 (3d Cir.), *cert. denied*, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950), on the ground that grantor did not retain a reversion in those cases). In addition, Rosenfeld was legally obligated to pay rent. The trustees were required to collect a fixed rent which the Commissioner concedes is fair, and also to discharge their fiduciary duties to the trust beneficiaries. Although the lease was initially coterminous with the trust, the lease amendments required renegotiation on an annual basis if Rosenfeld was to continue to occupy the building, and there is nothing presented to us to cause us to believe that this bargaining would not be carried out at arm's length.

In addition to these substantial changes in the economic positions of the parties, there were legitimate non-tax motives for the creation of the trust and the leaseback. Rosenfeld understandably wanted to guarantee his children's financial well-being, and the trust helped assure realization of this objective. *See Brooke v. United States, supra*, 468 F.2d at 1158; *cf. Parshelsky's Estate v. Commissioner*, 303 F.2d 14, 18–19 (2d Cir.1962) (court considering tax consequences of corporate reorganization examines non-tax-avoidance motives of both corporation and shareholders). The leaseback was also clearly motivated by concerns other than tax savings and was a business necessity. Rosenfeld required an office to practice medicine, and the rental payments were a condition of continued occupancy.

While recognizing these factors, the Commissioner asserts, nonetheless, that nothing changed because Rosenfeld was occupying the same premises as a lessee which he

---

**5.** Indeed, we note many commentators have criticized those decisions which adopt the Commissioner's position. Our dissenting brother's reasoning essentially follows the views of those Circuits with which we disagree. The authorities forcefully argue that compliance with the Clifford sections of the Tax Code should be sufficient to ensure the deductibility of rent payments in a gift-leaseback situation. *See, e.g.*, Froehlich, *Clifford Trusts: Use of Partnership Interests as Corpus; Leaseback Arrange-*

*ments*, 52 Calif.L.Rev. 956, 973–74 (1964); Note, *Clifford Trusts: A New View Towards Leaseback Deductions*, 43 Alb.L.Rev. 585, 594–95 (1979); Note, *Gifts and Leasebacks: Is Judicial Consensus Impossible?*, 49 U.Cin.L.Rev. 379, 393–94 (1980); Comment, *Gift Leaseback Transactions: An Unpredictable Tax-Savings Tool*, 53 Temple L.Q. 569 (1980). *En passant*, we note that our views have prevailed in the greater number of Circuits which have already considered the issue now before us.

previously used as the owner. This argument is disingenuous. Rosenfeld could have given the property to his children in trust and leased property from a third party for an amount equally fair and reasonable for his medical office. It is clear, and indeed, counsel conceded at oral argument, that a rent deduction would have been entirely proper in such a case. *See Frank Lyon Co. v. United States, supra.* In real terms, there is little difference between this hypothetical case and the events the Commissioner challenges. In both cases Rosenfeld would have voluntarily relinquished his right to occupy his offices rent-free, and created the need to lease other premises. It can hardly be a matter of concern for the Commissioner whether Rosenfeld rents from the trust rather than from some third party. In either situation he would be required to pay rent, and the trust could receive rental income from the property it owned.

### III

In sum, we believe the gift-leaseback transaction substantially altered Rosenfeld's economic and beneficial rights, and accordingly, the arrangement, which was otherwise proper under both the Clifford sections of the Internal Revenue Code and § 162(a)(3), was not rendered objectionable merely because Rosenfeld's rent payments were made to a trust which he established for the benefit of his children. The Tax Court properly concluded that Rosenfeld had a right to deduct his rent expenses pursuant to I.R.C. § 162(a)(3).

The order is affirmed.

MacMAHON, District Judge, dissenting:

I respectfully dissent. It is fundamental that in determining liability for income taxes courts consider the economic reality, not the form, of financial transactions. In the words of Judge Learned Hand:

> The Income Tax Act imposes liabilities upon taxpayers based upon their financial transactions, and it is of course true that the payment of the tax is itself a financial transaction. *If, however, the taxpayer enters into a transaction that does not appreciably affect his beneficial interest except to reduce his tax, the law will disregard it;* for we cannot suppose that it was part of the purpose of the act to provide an escape from the liabilities that it sought to impose.

*Gilbert v. Commissioner,* 248 F.2d 399, 411 (2d Cir.1957) (L. Hand, J., dissenting) (emphasis added). Since I find that the transaction here does not appreciably affect the beneficial interest of the taxpayer, except to reduce his tax, I cannot agree with the majority. Nor can I find either a business purpose in the transaction or a significant transfer of control over the property.

### I. *Business Purpose*

Those courts that have permitted deduction of rental payments after a gift and leaseback have taken a "bifurcated" approach, viewing the gift and the leaseback as separate transactions, while those that have denied deductions have looked at the contemporaneous gift and leaseback as one transaction. *See Perry v. United States,* 520 F.2d 235, 238 (4th Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *Brooke v. United States,* 468 F.2d 1155, 1160 (9th Cir.1972) (Ely, J., dissenting). The government argues that we should consider the contemporaneous gift and leaseback as a single transaction and apply the business purpose rule to the taxpayer's claimed deduction for rental payments. The majority characterizes this argument as requiring a business purpose for the gift and a business purpose for the leaseback. It is illogical to require a business purpose for a gift, and this is not the government's argument. The government argues that the contemporaneous gift and leaseback be viewed as one transaction and that the business purpose rule be applied to the taxpayer's claimed deduction for the "business expense" of the resulting rental payments.

Both the facts of the instant case and the relevant legal standards compel the conclusion that the gift and leaseback must be viewed as a single transaction. The uncon-

troverted evidence is that Dr. Rosenfeld approached his lawyer and his accountant because he wanted to make lifetime gifts to his children. The trust, deed and lease were executed the same day, July 1, 1969, and the lease was coterminous with the trust. It also is undisputed that the terms of the trust and of the lease were fixed before that day.

The total payments made by Dr. Rosenfeld were far in excess of the reasonable rental value of the office. This court previously has recognized, in a gift-leaseback, the significance of the fact that the transaction is disadvantageous to the business. *White v. Fitzpatrick,* 193 F.2d 398, 400 (2d Cir.1951), *cert. denied,* 343 U.S. 928, 72 S.Ct. 762, 96 L.Ed. 1338 (1952). In the instant case, Dr. Rosenfeld initially paid $14,000 per year, which was the gross rental, as determined by an independent appraiser, necessary to carry the building's fair market value. However, the appraiser determined that the highest and best use of the building was as a professional office, with the unfinished one-third of the building "finished and occupied." But Dr. Rosenfeld paid the full appraised rent while using the one-third unfinished space not for an office but for storage. In addition, Dr. Rosenfeld remained liable on the mortgage and continued to make the monthly payments. The standard in this court for determining whether a business expense is "ordinary and necessary," 26 U.S.C. § 162(a), and therefore deductible, is whether a hard-headed businessman, under the circumstances, would have incurred the expense. *Cole v. Commissioner,* 481 F.2d 872, 876 (2d Cir.1973). These terms, I submit, are not the terms on which a hard-headed businessman would sign a lease for an office he already owned and occupied. Dr. Rosenfeld remained liable on the mortgage so that the gift of the building to the trust would be of greater value to his daughters and, presumably, because the interest deductions were of more value to him than to the trust. He was willing to pay a high rent because the

greater the rent, the greater the gift to his daughters and the lower the family's taxes. As in *Mathews v. Commissioner,* 520 F.2d 323, 325 (5th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976), "the fact rent negotiations produced 'reasonable' results is totally irrelevant. Any bargaining is simply not at arm's length, because any rent exceeding expenses stays in the . . . family."

Dr. Rosenfeld's scheme amounts in substance to an assignment of $14,000 of his yearly income to the trust. Such an assignment would not be recognized by the tax law. In *White v. Fitzpatrick, supra,* the taxpayer owned and operated a company which owned a certain patent essential to its business. The taxpayer transferred the patent to his wife for ten dollars, and the following day the wife licensed the exclusive manufacturing rights to the taxpayer for the term of the patent. This court described the transaction thus: "The sole practical effect of these transactions . . . was to create a right to income in the wife, while leaving untouched in all practical reality the husband-donor's effective dominion and control over the properties in question." 193 F.2d at 400. The court denied the taxpayer a business deduction for the resulting royalties, stating that the taxpayer's scheme "in effect . . . is not different from claiming that the gift itself made the original income [his wife's] in the first place." *Id.* at 401. In the instant case, Dr. Rosenfeld in effect diverted $14,000 of his income to the trust by taking a business deduction for rent.[1] The only conclusion that can be drawn from these facts is that the trust, deed and lease were conceived and executed at the same time and for the same purpose and that the purpose was to make gifts to Dr. Rosenfeld's children.

It is beyond question that courts will look to the substance of transactions in determining their tax consequences. *See Diedrich v. Commissioner,* 457 U.S. 191, 194–96, 102 S.Ct. 2414, 2417–18, 72 L.Ed.2d 777 (1982);

---

1. *See* S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad.News 4621, 5006 (validity of Clifford trust not appli-

cable in situations of assignment of income); 26 C.F.R. § 1.671–1(c) (1982) (same).

*Knetsch v. United States,* 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); *Griffiths v. Commissioner,* 308 U.S. 355, 357–58, 60 S.Ct. 277, 278, 84 L.Ed. 319 (1939). This court has repeatedly recognized this salutary principle. *See Hoffman Motors Corp. v. United States,* 473 F.2d 254, 257 (2d Cir. 1973) ("[C]ourts will look through the 'form' of a business transaction and rule on the basis of its 'substance.' "); *Philipp Bros. Chemicals, Inc. (N.Y.) v. Commissioner,* 435 F.2d 53, 57 (2d Cir.1970) ("[I]t is economic reality, rather than legal formality, which determines who earns income."); *Lubin v. Commissioner,* 335 F.2d 209, 213 (2d Cir. 1964) ("[O]ur taxing statutes are intended to take cognizance of realities and not mere appearances or facades.").[2] Furthermore, this court has answered the question of whether a deduction is permissible for rental payments arising from a gift-leaseback in *White v. Fitzpatrick, supra.* The court denied the deduction,[3] stating:

> Gift and retained control must be regarded as inseparable parts of a single transaction, especially since it was only in their sum total that they had any reality in regard to the conduct of [taxpayer's] business. To isolate them ... is to hide business reality behind paper pretense.

*White v. Fitzpatrick, supra,* 193 F.2d at 400.[4] *White* was cited in *Perry v. United States, supra,* in which the Fourth Circuit Court of Appeals denied a deduction for rental payments arising from a gift-leaseback. *See* 520 F.2d at 238 n. 3.

2. *See Mathews v. Comm'r,* 520 F.2d 323, 325 (5th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976):
   In deciding the federal questions of income tax law, we must examine transactions with substance rather than form in mind. If we stood at the top of the world and looked down on this transaction—ignoring the flyspeck of legal title under state law—we would see the same state of affairs the day after the trust was created that we saw the day before.

3. *See also Hall v. United States,* 208 F.Supp. 584 (N.D.N.Y.1962) (denying deduction for rental payments made by grantor-doctor after gift-leaseback of medical office property).

4. *Cf. Blake v. Comm'r,* 697 F.2d 473, 480–81 (2d Cir.1982) ("Where there is, as here, an expectation on the part of the donor that is

Nonetheless, the majority struggles to avoid application of the business purpose rule by arguing that, although it is proper to determine tax consequences by "examining all that occurred," this "does not, of course, imply that we should blindly apply the business purpose standard ... without consideration of other factors which bear on the case." Here, the majority points, "[t]o illustrate," to the validity of the trust as one of these "other factors," but the majority does not point to any other transaction for which a deduction under Section 162(a) is allowed without a business purpose. It is clear that, rather than using the trust as an "illustration," the majority relies on the validity of the trust in allowing the deduction. The majority offers the validity of the trust as the sole "other factor" to be considered. In addition, the majority concludes that the test to be applied to the gift is whether the gift was a "sham." In other words, if the gift is valid, the deduction is allowed; if the gift is a sham, the deduction is denied. The majority, and the other courts which have reached the same result,[5] have been unfaithful to the cases cited above because they have been seduced by the Clifford trust. However, the majority's reliance on the validity of the trust does not withstand analysis.

First, the legislative history plainly states that the Clifford trust sections are irrelevant in determining the deductibility of Dr. Rosenfeld's rental payments. The Senate Finance Committee Report states:

> reasonable, with an advance understanding that the donee charity will purchase the asset with the proceeds of the donated stock, the transaction will be looked at as a unitary one.").

5. *Brown v. Comm'r,* 180 F.2d 926 (3d Cir.), *cert. denied,* 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950) (2–1 decision) (trust of up to 21 years duration); *Skemp v. Comm'r,* 168 F.2d 598 (7th Cir.1948) (trust to terminate after 20 years or upon deaths of grantor and wife, whichever first occurs); *Quinlivan v. Comm'r,* 599 F.2d 269 (8th Cir.), *cert. denied,* 444 U.S. 996, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979) (Clifford trust); *Brooke v. United States,* 468 F.2d 1155 (9th Cir.1972) (2–1 decision) (guardianship which constituted a Clifford trust).

The effect of this provision is to insure that taxability of Clifford type trusts shall be governed solely by this subpart [rather than by 26 U.S.C. § 61]. However, this provision does not affect the principles governing the taxability of income to a grantor or assignor other than by reason of his dominion and control over the trust .... *This subpart also has no application in determining the right of a grantor to deductions for payments to a trust under a transfer and leaseback arrangement.*

S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad. News 4621, 5006 (emphasis added). *See also Perry v. United States, supra,* 520 F.2d at 237 n. 2. This language could hardly be clearer.

Second, the majority relies on the argument, advanced by the Eighth Circuit Court of Appeals in *Quinlivan v. Commissioner,* 599 F.2d 269 (8th Cir.), *cert. denied,* 444 U.S. 996, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979), that to deny a deduction here "would produce a benefit only in cases where investment property—not used in the grantor's trade or business—is placed in trust. Persons whose assets consist largely of business property would be excluded from a tax benefit clearly provided by Congress." *Id.* at 274. The infirmities of this argument are many. First, it is an argument about legislative intent, but is of course unaccompanied by citation to the legislative history. Second, it ignores the fact that this "benefit clearly provided" is not "provided" to the majority of taxpayers who do not have assets lying around that they can give away for ten years at a time. Third, there would be no such "unfairness" if the taxpayer had assets other than business property which could form the corpus of a Clifford trust. The record does not indicate, nor does the opinion in *Quinlivan,* whether the respective taxpayers had other assets substantial enough to form the corpus of a Clifford trust.

Most importantly, however, the *Quinlivan* argument ignores the fact that the "tax benefit" is not the deduction of rental payments but the diversion of income from the grantor to the trust. The argument is that it is somehow unfair, or contrary to Congress' intent, that persons whose *only* asset substantial enough to form the corpus of a Clifford trust is business property are excluded from taking advantage of the Clifford trust provisions. The remedy, the argument runs, is for the courts to ignore the business purpose rule and the substance of the transaction and grant the taxpayer a business expense deduction. But owners of other types of assets which produce no income, such as commodities or residences, also are unable to take advantage of the Clifford trust provisions. If Dr. Rosenfeld placed his residence in a Clifford trust, no court would permit him to deduct the resulting rent in order to effectuate the Clifford trust provisions. In the instant case, Dr. Rosenfeld, instead of purchasing the land and building in question, could have purchased some other asset and placed that asset in a Clifford trust. But he did not because he wanted not only a tenant's but also a landlord's control over his office. *See infra* Part II.

The majority also argues, later in its opinion, that there is no difference "in real terms" between this case and the hypothetical case where Dr. Rosenfeld leases office space somewhere else and the trust property is leased to a third party. But there is a difference, as shown in Part II of this dissent. Dr. Rosenfeld exerted substantial control over the property by remaining in a building he previously owned and that he, and later his wife, would own in the future, and by dealing with trustee-lessors who were his personal advisors, and later his daughter. Although his legal interest in the property was a leasehold, he acted as both tenant and landlord and claimed the tax deductions available to both a tenant (rent) and an owner (interest on the mortgage). In short, Dr. Rosenfeld wants to have his cake, or more accurately the Treasury's, and eat it too.

In sum, Dr. Rosenfeld began paying rent on July 1, 1969, not in order to have an office in which to practice medicine, be-

cause he already had such an office. He began paying rent so that the trust would have income and his purpose of making a lifetime gift to his children would be fulfilled. There was simply no business purpose in this transaction. Moreover, the majority's adoption of the Tax Court's four-part test is unnecessary because the business purpose rule has no infirmity in this context. This exception to the business purpose rule increases the complexity of the law in an area where I had thought the complexity already sufficient. Adoption of the four-part test, involving a factual inquiry into the particular circumstances of the taxpayer's scheme years after the scheme is implemented, will make it even more difficult for taxpayers to plan their affairs. A holding that rental payments arising from a gift-leaseback are not deductible simply would require taxpayers to find other, less hypocritical means of avoiding their taxes.

## II. *Retention of Control*

The government argues that, even if the bifurcated approach to the gift and lease-back is adopted, Dr. Rosenfeld should not be granted a deduction for his rental payments. The government bases this argument on the principles that transactions lacking in economic substance cannot form the basis for tax deductions, *see Knetsch v. United States, supra,* 364 U.S. at 366, 81 S.Ct. at 135; *Goldstein v. Commissioner,* 364 F.2d 734, 741 (2d Cir.1966), *cert. denied,* 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967); *Gilbert v. Commissioner, supra,* 248 F.2d at 411 (L. Hand, dissenting), and that transactions entered into among family members for the purpose of splitting income must be examined with strict scrutiny, *see Commissioner v. Tower,* 327 U.S. 280, 291, 66 S.Ct. 532, 537, 90 L.Ed. 670 (1946); *Helvering v. Clifford,* 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940); *White v. Fitzpatrick, supra,* 193 F.2d at 402. The majority ignores these principles, applying instead the first prong of the Tax Court's special four-part test. This prong requires that the grantor, in order to re-ceive a deduction, must not retain "substantially the same control over the property that he had before he made the gift." Because I believe that even this requirement has not been met, I must dissent on this ground also.

The original trustees, Mr. Powsner and Mr. Goldman, were Dr. Rosenfeld's advisors. They were the individuals who concocted the gift-leaseback scheme, and it is to be expected that they would want Dr. Rosenfeld to be satisfied with the arrangement. Nor surprisingly, the trustees never spoke with another potential tenant in 1969, and there is no evidence that they did so in 1975 when the new lease was signed. The trustees' purpose obviously was to satisfy both their fiduciary duties and Dr. Rosenfeld, and, indeed, Mr. Goldman testified that he saw no reason for contacting other potential tenants and "disturbing the doctor's practice." Moreover, it is fair to say that the original trustees, if not bosom buddies, certainly were located less than an arm's length from Dr. Rosenfeld. The trustees, for example, never attempted to improve or lease the unfinished one-third of the building because, in Mr. Goldman's words on redirect examination, "I was informed by *Dr. Rosenfeld, who inquired about it on our behalf,* that the cost of making it into finished office space was very prohibitive, and would not be worth the rent that would be collectible, and this would be an enormous cost to the—to the parties involved" (emphasis added). The fact that "the tenant" is able to instruct "the landlord" whether to improve the building surely amounts at least to " 'passive acquiescence to the will of the donor.' " *White v. Fitzpatrick, supra,* 193 F.2d at 402 (quoting *Commissioner v. Culbertson,* 337 U.S. 733, 747, 69 S.Ct. 1210, 1216, 93 L.Ed. 1659 (1949).

The lease also granted Dr. Rosenfeld the right to build onto the building, an indicia of ownership one would not expect to find in a tenant's hands. Moreover, as explained in Part I, *supra,* the total payments made

by Dr. Rosenfeld were excessive. Dr. Rosenfeld was willing to pay a premium because he was more than a tenant.

In 1973 Dr. Rosenfeld deeded his reversion in the trust corpus to his wife. The possibility, urged by Dr. Rosenfeld's counsel, that the Rosenfelds might obtain a divorce in the future is mere speculation, while the question before us is one of fact. The reversion in Dr. Rosenfeld's wife is of little relevance because the question is one of control, not one of equity. Moreover, once the property is in the hands of his wife, pursuant to his gift, deductions for his rental payments will not be allowed. *White v. Fitzpatrick, supra.* In short, that Dr. Rosenfeld became wise enough in 1973 to deed the reversion to his wife does nothing to weaken the substantial control he retained.

In 1975 Dr. Rosenfeld amended the trust, extending its term five and one-half years. He was able to extend the trust even though, having already deeded his reversion to his wife, he had no beneficial interest in the corpus. By extending the trust, Dr. Rosenfeld shifted from his wife to his daughters the income of the property for the period covered by the extension. And there is little chance that Dr. Rosenfeld would be opposed in another attempt to extend the trust: his daughters would not object, and his wife is not likely to object because her income from the property would be taxed to him. *White v. Fitzpatrick, supra.* Dr. Rosenfeld, for all practical purposes, has the power to determine who receives the income from the property.

Moreover, when Dr. Rosenfeld amended the trust, he appointed his daughter Barbara and Robert Swados, an attorney, as trustees.[6] The amendment provided that the trustees could act by majority vote, but only if Barbara Rosenfeld was among the majority. In other words, the trustees could take no action opposed by Barbara Rosenfeld, who was, of course, the grantor's

daughter, a beneficiary of the trust and a recipient of her father's largesse.

In sum, the question before us is not what amount of control Dr. Rosenfeld gave to the trustees, but whether the control he retained was "substantially the same [as] he had before he made the gift." Dr. Rosenfeld determined whether to improve the unfinished space in the building, and he had the right to build onto the building. He paid all expenses of the land and building except real estate taxes and structural repairs, the deduction which he shifted to his family. He faced no competitors either time he signed a lease with the trustees. The trustees were his advisors and, later, his daughter Barbara, one of the recipients of his largesse. Dr. Rosenfeld extended the trust once, installing his daughter as a trustee with an essential vote, and might do so again. This, I think, is enough control over the building to be "substantially the same ... [as] he had before he made the gift," and to make Dr. Rosenfeld, like the taxpayer in *White v. Fitzpatrick, supra,* the "actual enjoyer and owner of the property." 193 F.2d at 402. As this court recently stated, " '*for tax purposes,* there was not a sufficient severance of the [taxpayer's] ownership over the assets for the transaction to create the tax consequence' intended for her." *Blake v. Commissioner,* 697 F.2d 473, 480 (2d Cir.1982) (quoting *United States v. General Geophysical Co.,* 296 F.2d 86, 90 (5th Cir.1961), *cert. denied,* 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962) (on petition for rehearing)).

---

6. Mr. Powsner had died before this.