**ESTATE OF Lydia G. MAXWELL, deceased; First National Bank of Long Island; Victor C. McCuaig, Jr., Executors, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 1233, Docket 92–4230.

United States Court of Appeals, Second Circuit.

Argued March 15, 1993.

Decided Aug. 23, 1993.

Charles G. Mills, Glen Cove, NY (James M. Marrin and Jed C. Albert, Payne, Wood & Littlejohn, of counsel), for petitioners-appellants.

Marion E.M. Erickson, Atty., Tax Div., Dept. of Justice, Washington, DC (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen and Kenneth L. Greene, Attys., Tax Div., Dept. of Justice, of counsel), for respondent-appellee.

Before: ALTIMARI and WALKER, Circuit Judges, and LASKER, District Judge.*

LASKER, Senior District Judge:

This appeal presents challenges to the tax court's interpretation of section 2036(a) of the Internal Revenue Code, relating to "Transfers with retained life estate." The petitioner, the Estate of Lydia G. Maxwell, contends that the tax court erred in holding that the transaction at issue (a) was a transfer with retained life estate within the meaning of 26 U.S.C. § 2036 and (b) was not a bona fide sale for adequate and full consideration under that statute.

The decision of the tax court is affirmed.

## I.

On March 14, 1984, Lydia G. Maxwell (the "decedent") conveyed her personal residence, which she had lived in since 1957, to her son Winslow Maxwell, her only heir, and his wife Margaret Jane Maxwell (the "Maxwells"). Following the transfer, the decedent continued to reside in the house until her death on July 30, 1986. At the time of the transfer, she was eighty-two years old and was suffering from cancer.

The transaction was structured as follows:

1) The residence was sold by the decedent to the Maxwells for $270,000;[1]

2) Simultaneously with the sale, the decedent forgave $20,000 of the purchase price (which was equal in amount to the annual gift tax exclusion to which she was entitled[2]);

3) The Maxwells executed a $250,000 mortgage note in favor of decedent;

4) The Maxwells leased the premises to her for five years at the monthly rental of $1800; and

5) The Maxwells were obligated to pay and did pay certain expenses associated with the property following the transfer, including property taxes, insurance costs, and unspecified "other expenses."

While the decedent paid the Maxwells rent totalling $16,200 in 1984, $22,183 in 1985 and $12,600 in 1986, the Maxwells paid the decedent interest on the mortgage totalling $16,875 in 1984, $21,150 in 1985, and $11,475 in 1986. As can be observed, the rent paid by the decedent to the Maxwells came remarkably close to matching the mortgage interest which they paid to her. In 1984, she paid the Maxwells only $675 less than they paid her; in 1985, she paid them only $1,033 more than they paid her, and in 1986 she paid the Maxwells only $1,125 more than they paid her.

Not only did the rent functionally cancel out the interest payments made by the Maxwells, but the Maxwells were at no time called upon to pay any of the principal on the $250,000 mortgage debt; it was forgiven in its entirety. As petitioner's counsel admitted at oral argument, although the Maxwells had executed the mortgage note, "there was an intention by and large that it not be paid." Pursuant to this intention, in each of the following years preceding her death, the decedent forgave $20,000 of the mortgage principal, and, by a provision of her will executed on March 16, 1984 (that is, just two days after the transfer), she forgave the remaining indebtedness.

The decedent reported the sale of her residence on her 1984 federal income tax return but did not pay any tax on the sale because she elected to use the once-in-a-lifetime exclusion on the sale or exchange of a principal residence provided for by 26 U.S.C. § 121.

She continued to occupy the house by herself until her death. At no time during her occupancy did the Maxwells attempt to sell the house to anyone else, but, on September 22, 1986, shortly after the decedent's death, they did sell the house for $550,000.

---

* Hon. Morris E. Lasker, Judge, United States District Court for the Southern District of New York, sitting by designation.

1. The parties have stipulated that the fair market value of the property on the date of the purported sale was $280,000.

2. During the years at issue, the tax code provided for an exclusion of $10,000 per year per donee from the gift tax.

Under I.R.C. § 2036(a), where property is disposed of by a decedent during her lifetime but the decedent retains "possession or enjoyment" of it until her death, that property is taxable as part of the decedent's gross estate, unless the transfer was a bona fide sale for an "adequate and full" consideration. 26 U.S.C. § 2036.

On the decedent's estate tax return, the Estate reported only the $210,000 remaining on the mortgage debt (following the decedent's forgiveness of $20,000 in the two preceding years). The Commissioner found that the 1984 transaction constituted a transfer with retained life estate—rejecting the petitioners' arguments that the decedent did not retain "possession or enjoyment" of the property, and that the transaction was exempt from section 2036(a) because it was a bona fide sale for full and adequate consideration—, and assessed a deficiency against the Estate to adjust for the difference between the fair market value of the property at the time of decedent's death ($550,000) and the reported $210,000.

The Estate appealed to the tax court, which, after a trial on stipulated facts, affirmed the Commissioner's ruling, holding:

> On this record, bearing in mind petitioner's burden of proof, we hold that, notwithstanding its form, the substance of the transaction calls for the conclusion that decedent made a transfer to her son and daughter-in-law with the understanding, at least implied, that she would continue to reside in her home until her death, that the transfer was not a bona fide sale for an adequate and full consideration in money or money's worth, and that the lease represented nothing more than an attempt to add color to the characterization of the transaction as a bona fide sale.

■ There are two questions before us: Did the decedent retain possession or enjoyment of the property following the transfer. And if she did, was the transfer a bona fide sale for an adequate and full consideration in money or money's worth.

## II.

Section 2036(a) provides in pertinent part:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
>
> (1) the possession or enjoyment of, or the right to the income from, the property,
> . . .

26 U.S.C. § 2036(a). In the case of real property, the terms "possession" and "enjoyment" have been interpreted to mean "the lifetime use of the property." *United States v. Byrum*, 408 U.S. 125, 147, 92 S.Ct. 2382, 2395, 33 L.Ed.2d 238 (1972).

In numerous cases, the tax court has held, where an aged family member transferred her home to a relative and continued to reside there until her death, that the decedent-transferor had retained "possession or enjoyment" of the property within the meaning of § 2036. As stated in *Rapelje v. Commissioner*, 73 T.C. 82, 1979 WL 3799 (1979):

> Possession or enjoyment of gifted property is retained [by the transferor] when there is an express or implied understanding to that effect among the parties at the time of transfer. *Guynn v. United States*, 437 F.2d 1148, 1150 (4th Cir.1971); *Estate of Honigman v. Commissioner, supra* [66 T.C. 1080], at 1082 [1976 WL 363]; *Estate of Hendry v. Commissioner*, 62 T.C. 861, 872 [1974 WL 2655] (1974); *Estate of Barlow v. Commissioner*, 55 T.C. 666, 670 [1971 WL 2512] (1971).

*Id.* at 86. As the *Rapelje* opinion indicates by its citation of earlier decisions, courts have held that § 2036(a) requires that the fair market value of such property be included in the decedent's estate

> if he retained the actual possession or enjoyment thereof, even though he may have had no enforceable right to do so. *Estate of Honigman v. Commissioner*, 66 T.C. 1080, 1082 [1976 WL 3631] (1976); *Estate*

of *Linderme v. Commissioner*, 52 T.C. 305, 308 [1969 WL 1616] (1969).

*Id.* In such cases, the burden is on the decedent's estate to disprove the existence of any adverse implied agreement or understanding and

> that burden is particularly onerous when intrafamily arrangements are involved. *Skinner's Estate v. United States*, 316 F.2d 517, 520 (3d Cir.1963); *Estate of Hendry v. Commissioner, supra* at 872; *Estate of Kerdolff v. Commissioner*, 57 T.C. 643, 648 [1972 WL 2464] (1972).

*Id.*

As indicated above, the tax court found as a fact that the decedent had transferred her home to the Maxwells "with the understanding, at least implied, that she would continue to reside in her home until her death." This finding was based upon the decedent's advanced age, her medical condition, and the overall result of the sale and lease. The lease was, in the tax court's words, "merely window dressing"—it had no substance.

■ The tax court's findings of fact are reversible only if clearly erroneous. *Bausch & Lomb, Inc. v. Commissioner*, 933 F.2d 1084, 1088 (2d Cir.1991). We agree with the tax court's finding that the decedent transferred her home to the Maxwells "with the understanding, at least implied, that she would continue to reside in her home until her death," and certainly do not find it to be clearly erroneous. The decedent did, in fact, live at her residence until she died, and she had sole possession of the residence during the period between the day she sold her home to the Maxwells and the day she died. There is no evidence that the Maxwells ever intended to occupy the house themselves, or to sell or lease it to anyone else during the decedent's lifetime. Moreover, the Maxwells' failure to demand payment by the estate, as they were entitled to do under the lease, of the rent due for the months following decedent's death and preceding their sale of the property, also supports the tax court's finding.

The petitioner argues in its memorandum of law that the tax court's ruling was erroneous "as a matter of law":

as a matter of law the decedent's status as a tenant was not such as to include this asset in the estate under Internal Revenue Code 2036 at all.

We construe this to be a contention that the decedent's status was no more than that of a tenant, and that such a status was insufficient to cause the property to be includible in her estate or to qualify as "possession or enjoyment" under section 2036(a). However, the petitioner misapprehends the tax court's ruling. That court held, on the basis of all the facts described above, that the decedent's use of the house following the transfer depended not on the lease but rather on an implied agreement between the parties that the decedent could and would continue to reside in the house until her death, as she actually did. It found that the lease "represented nothing more than an attempt to add color to the characterization of the transaction as a bona fide sale." The tax court did not rely on the tenancy alone to establish "possession or enjoyment."

Just as petitioner argues that the decedent's tenancy alone does not justify inclusion of the residence in her estate, so it argues that the decedent's payment of rent sanctifies the transaction and renders it legitimate. Both arguments ignore the realities of the rent being offset by mortgage interest, the forgiveness of the entire mortgage debt either by gift or testamentary disposition, and the fact that the decedent was eighty-two at the time of the transfer and actually continued to live in the residence until her death which, at the time of the transfer, she had reason to believe would occur soon in view of her poor health.

The Estate relies primarily on *Barlow v. Commissioner*, 55 T.C. 666, 1971 WL 2512 (1971). In that case, the father transferred a farm to his children and simultaneously leased the right to continue to farm the property. The tax court held that the father did not retain "possession or enjoyment," stating that

> "one of the most valuable incidents of income-producing real estate is the rent which it yields. He who receives the rent in fact enjoys the property."

*Barlow*, 55 T.C. at 671 (quoting *McNichol's v. Commissioner*, 265 F.2d 667, 671 (3d Cir.), *cert. denied*, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959)). However, *Barlow* is clearly distinguishable on its facts: In that case, there was evidence that the rent paid was fair and customary and, equally importantly, the rent paid was not offset by the decedent's receipt of interest from the family lessor.

Nor is there any merit to petitioner's contention that the "decedent's status as a tenant" exempts her from § 2036(a) "as a matter of law." *Barlow* itself recognized that where a transferor "by agreement" "reserves the right of occupancy as an incident to the transfer," § 2036(a) applies. *Barlow*, 55 T.C. at 670. The court there simply reached a different conclusion on its facts:

> [The] substance-versus-form argument, *while theoretically plausible*, depends upon the facts, and we do not think the record as a whole contains the facts required to give it life. . . .

*Id.* at 670 (emphasis added).

For the reasons stated above, we conclude that the decedent did retain possession or enjoyment of the property for life and turn to the question of whether the transfer constituted "a bona fide sale for adequate and full consideration in money or money's worth."

## III.

Section 2036(a) provides that even if possession or enjoyment of transferred property is retained by the decedent until her death, if the transfer was a bona fide sale for adequate and full consideration in money or money's worth, the property is not includible in the estate. Petitioner contends that the Maxwells paid an "adequate and full consideration" for the decedent's residence, $270,000 total, consisting of the $250,000 mortgage note given by the Maxwells to the decedent, and the $20,000 the decedent forgave simultaneously with the conveyance.[3]

The tax court held that neither the Maxwells' mortgage note nor the decedent's $20,000 forgiveness constituted consideration within the meaning of the statute.

*$250,000 Mortgage Note*

As to the $250,000 mortgage note, the tax court held that:

> Regardless of whether the $250,000 mortgage note might otherwise qualify as "adequate and full consideration in money or money's worth" for a $270,000 or $280,000 house, the mortgage note here had no value at all if there was no intention that it would ever be paid.
>
> The conduct of decedent and the Maxwells strongly suggest that neither party intended the Maxwells to pay any part of the principal of either the original note or any successor note.

There is no question that the mortgage note here is a fully secured, legally enforceable obligation on its face. The question is whether it is actually what it purports to be—a bona fide instrument of indebtedness—or whether it is a facade. The petitioner argues not only that an allegedly unenforceable intention to forgive indebtedness does not deprive the indebtedness of its status as "consideration in money or money's worth" but also that "[t]his is true even if there was an implied agreement exactly as found by the Tax Court." (Petitioner's Memorandum of Law at 3).

We agree with the tax court that where, as here, there is an implied agreement between the parties that the grantee would never be called upon to make any payment to the grantor, as, in fact, actually occurred, the note given by the grantee had "no value at all." We emphatically disagree with the petitioner's view of the law as it applies to the facts of this case. As the Supreme Court has remarked,

> the family relationship often makes it possible for one to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control

---

**3.** As noted above, the parties have stipulated that the fair market value of the property on the date of the purported sale was $280,000. The Estate contends that $270,000 was full and adequate consideration for the sale, with a broker, for a house appraised at $280,000. We assume this fact to be true for purposes of determining whether the transaction was one for "an adequate and full consideration in money or money's worth."

over the subject of the gift or the purposes for which the income from the property is used.

*Commissioner v. Culbertson,* 337 U.S. 733, 746, 69 S.Ct. 1210, 1216, 93 L.Ed. 1659 (1949). There can be no doubt that intent is a relevant inquiry in determining whether a transaction is "bona fide". As another panel of this Court held recently, construing a parallel provision of the Internal Revenue Code, in a case involving an intrafamily transfer:

> when the bona fides of promissory notes is at issue, the taxpayer must demonstrate affirmatively that "there existed at the time of the transaction a real expectation of repayment and an intent to enforce the collection of the indebtedness." *Estate of Van Anda v. Commissioner,* 12 T.C. 1158, 1162 [1949 WL 301] (1949), *aff'd per curiam,* 192 F.2d 391 (2d Cir.1951). *See also Estate of Labombarde v. Commissioner,* 58 T.C. 745, 754–55 [1972 WL 2474] (1972), *aff'd,* 73–2 U.S. Tax Cas. (CCH) ¶ 12953 (1st Cir.1973).

*Flandreau v. Commissioner,* 994 F.2d 91, 93 (2d Cir.1993) (case involving I.R.C. § 2053(c)(1)). In language strikingly apposite to the situation here, the court stated:

> it is appropriate to look beyond the form of the transactions and to determine, as the tax court did here, that the gifts and loans back to decedent were "component parts of single transactions."

*Id.* (citation omitted).

The tax court concluded that the evidence "viewed as a whole" left the "unmistakable impression" that

> regardless of how long decedent lived following the transfer of her house, the entire principal balance of the mortgage note would be forgiven, and the Maxwells would

not be required to pay any of such principal.

*Id.*

The petitioner's reliance on *Haygood v. Commissioner,* 42 T.C. 936, 1964 WL 1247 (1964), not followed by Rev.Rul. 77–299, 1977–2 C.B. 343 (1977), *Kelley v. Commissioner,* 63 T.C. 321, 1974 WL 2687 (1974), not followed by Rev.Rul. 77–299, 1977–2 C.B. 343 (1977), and *Wilson v. Commissioner,* 64 T.C.M. (CCH) 583, 1992 WL 201812 (1992),[4] is misplaced. Those cases held only that intent to forgive notes in the future does not *per se* disqualify such notes from constituting valid consideration. In contrast, in the case at hand, the decedent did far more than merely "indicate[ ] an intent to forgive the indebtedness in the future." *Wilson,* 64 T.C.M. (CCH) 583, 584 (1992).

In *Haygood, Kelley,* and *Wilson,* the question was whether transfers of property by petitioners to their children or grandchildren in exchange for notes were completed gifts within the meaning of the Internal Revenue Code. None of the notes was actually paid by the grantees; instead the notes were either forgiven by petitioners at or about the time they became due (*Haygood* and *Kelley*) or the petitioner died prior to the date when the note was due (*Wilson*). In those circumstances, the tax court held that the notes received by petitioners, secured by valid vendor's liens or by deeds of trust on the property, constituted valuable consideration for the transfer of the property.

The *Kelley* court made no finding as to intent to forgive the notes. In *Haygood,* although the court did find that the "petitioner had no intention of collecting the debts but did intend to forgive each payment as it became due," it also found that the transfer of the property to the children had been a mistake.[5] And, the *Wilson* court found that:

> The uncontradicted testimony in this case establishes that petitioner and her children

---

4. Apart from all of the other distinctions outlined below, *Wilson* is not a tax court opinion but a tax court memorandum; moreover, the decision in *Wilson* succeeded the Tax Court decision in this case.

5. The court stated that it was "eminently clear from the testimony that it was petitioner's intent

to give only a $3,000 interest [in the property] to each of her sons" that year but her lawyer accidentally structured the transaction to give the entire property to the petitioner's sons. *Haygood v. Commissioner,* 42 T.C. 936, 942, 1964 WL 1247 (1964).

intended that the children would sell the property and pay the note with the proceeds.

*Wilson*, 64 T.C.M. (CCH) at 584.

By contrast, in the case at hand, the tax court found that, at the time the note was executed, there was "an understanding" between the Maxwells and the decedent that the note would be forgiven.

> In our judgment, the conduct of decedent and the Maxwells with respect to the principal balance of the note, when viewed in connection with the initial "forgiveness" of $20,000 of the purported purchase price, strongly suggests the existence of an understanding between decedent and the Maxwells that decedent would forgive $20,000 each year thereafter until her death, when the balance would be forgiven by decedent's will.

If *Haygood* is read as holding that the intent to forgive notes has no effect on the question of whether the notes constitute valid consideration, it appears to be inconsistent with controlling tax principles and tax court decisions. For example, in *Deal v. Commissioner*, 29 T.C. 730, 1958 WL 1114 (1958),[6] the tax court held that the notes executed by the children were not intended as consideration for the transfer, holding that:

> After carefully considering the record, we think that the notes executed by the daughters were not intended to be enforced and were not intended as consideration for the transfer by the petitioner, and that, in substance, the transfer of the property was by gift.

29 T.C. at 746, quoted by *Haygood*. *See also* Rev.Rul. 77–299, 1977–2 C.B. 343 (1977). Even *Kelley* stated that notes "in proper legal form and regular on their face" are only "prima facie" what they purport to be. *Kelley*, 63 T.C. at 324–25.

---

6. *Deal* involved a conveyance by the taxpayer of a remainder interest in real property to a trust for the benefit of her four daughters. The taxpayer forgave a $3,000 portion of each note to each daughter in the year of the transfer of the property, and a similar portion of each note in the two subsequent years, and the remaining balance of the note in the following year. The tax court held that the taxpayer had made a gift of the remainder interest to the children.

*$20,000 Initial Forgiveness*

We also agree with the tax court that, as to the $20,000 which was forgiven simultaneously with the conveyance,

> In the absence of any clear and direct evidence that there existed an obligation or indebtedness capable of being forgiven ...

the $20,000 item had "no economic substance."

To conclude, we hold that the conveyance was not a bona fide sale for an adequate and full consideration in money or money's worth.

$$* \qquad * \qquad *$$

*Section 2043*

The petitioner argues finally that the tax court should be reversed because, under 26 U.S.C. § 2043, if there was any consideration in money or money's worth paid to the decedent, even if the payment was inadequate, the Estate is at least entitled to an exclusion pro tanto. The argument has no merit in the circumstances of this case. The tax court held, and we do also, that the transfer was without *any* consideration. Section 2043 applies only where the court finds that some consideration was given.

The decision of the tax court is affirmed.

WALKER, Circuit Judge, dissenting:

Nearly 60 years ago, in words as true today as they were then, Judge Learned Hand wrote that "[a]ny one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir.1934), *aff'd*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Thus, "when a taxpayer chooses to conduct his business in a certain form, 'the tax collector may not

---

The petitioner claims that *Deal* "may have been wrongly decided." However, *Deal* is still good law. Although *Haygood* reached a different conclusion, the court was careful not to overrule *Deal* but to distinguish it on its facts. *Haygood v. Commissioner*, 42 T.C. 936, 944, 1964 WL 1247 (1964).

deprive him of the incidental tax benefits flowing therefrom, unless it first be found to be but a fiction or a sham.'" *W. Braun Co. v. Commissioner*, 396 F.2d 264, 267 (2d Cir. 1968) (citation omitted); *see Newman v. Commissioner*, 902 F.2d 159, 162–63 (2d Cir. 1990); *Rosenfeld v. Commissioner*, 706 F.2d 1277, 1281 (2d Cir.1983).

The key facts in this case are not at issue. The decedent, an elderly woman, sold the house in order to minimize estate tax liabilities after her death. The Tax Code encourages such sales, granting a one time upward adjustment in basis for the sale of a principal residence by a person 55 years of age or older. 26 U.S.C. § 121. The decedent wished her son and daughter-in-law to become the owners of the property in question, and entered into a transaction whereby they purchased the property for a market price. She continued to occupy the house under a lease upon which she paid a monthly rent. The decedent took advantage of another tax benefit, the $10,000 per donee annual from the gift tax allowed during the years at issue, 26 U.S.C. § 2503, by forgiving $20,000 of the principal amount owed by the Maxwells at the time of the sale and each year thereafter until she died. On her death, the decedent forgave the remainder of the mortgage principal owed by the Maxwells.

There is no doubt that the decedent and the Maxwells structured the transaction at issue here to maximize tax benefits. However, it is far from clear that the transaction was a sham, and thus could be ignored for tax purposes by the IRS.

In erroneously upholding the Tax Court's determination that for purposes of 26 U.S.C. § 2036(a): (1) the decedent retained possession or enjoyment of the property until her death; and (2) the sale was not *bona fide* and for adequate and full consideration the majority ignores the settled law of this Circuit and misconstrues Tax Court case law.

I. *The Decedent's "Possession" of the Property*

The majority correctly states that, under § 2036(a)(1), an individual may retain possession or enjoyment of a property, following a legal transfer of ownership, pursuant to an express agreement or an implied understanding to that effect among the parties at the time of transfer. *See Estate of Honigman v. Commissioner*, 66 T.C. 1080, 1082, 1976 WL 3631 (1976). However, physical occupation of a property is not necessarily equivalent to possession or enjoyment of it. Rather, the statute looks to whether an individual gratuitously resides on a property following a sale until her death, thereby effectively retaining an ownership interest in the land. *See Estate of Barlow v. Commissioner*, 55 T.C. 666, 670, 1971 WL 2512 (1971); *see also Estate of Kerdolff v. Commissioner*, 57 T.C. 643, 1972 WL 2464 (1972); *Estate of Nicol v. Commissioner*, 56 T.C. 179, 182, 1971 WL 2642 (1971).

The majority makes much of the Tax Court's factual finding that the Maxwells intended to permit the decedent to remain living on the property beyond the lease term, if she survived it. The majority also emphasizes that "[t]he decedent did, in fact, live at her residence until she died. . . ." Majority Opinion at 594. However, I believe the crucial question under § 2036(a)(1) is not whether the Maxwells intended the decedent to remain on the property, or indeed whether she physically occupied the house until her death. Rather, it is whether she retained incidents of ownership of the land until her death.

In this case, the stipulated facts establish that the decedent remained on the land not as an owner, but as a tenant who fulfilled her duties under a lease by paying a rent of $1,800 per month. After the sale, the Maxwells assumed the burdens and costs of ownership, including insurance and property tax payments that were not off-set by the decedent's rents.

Tax Court case law makes clear that a rent-paying tenant does not retain possession or ownership of property. In *Estate of Barlow*, the decedent parents gave farmland to their children who leased the property back. Focusing on the terms of the lease, the court held that the children were in possession of the property because of their right to receive rental payments:

One of the most valuable incidents of income-producing real estate is the rent which it yields. He who receives the rent in fact enjoys the property. The record contains no evidence whatever of a contemporaneous agreement, oral or written, expressed or implied, qualifying in any way the terms of the deed and lease.

55 T.C. at 671 (citation omitted). In this case, there is no evidence of an agreement qualifying the Maxwells' right to receive rents under the lease. Indeed, the decedent made rental payments until her death. The majority seeks to distinguish *Estate of Barlow* on ground that the decedent's rental payments approximated the Maxwells' mortgage payments. However, the fact that the payments approximated each other does not obviate the economic significance of the lease, transforming it into a mere "facade." It is reasonable to expect that a market rent would approximate, if not exceed, the carrying costs of the property.

The proper result here might be different if the Tax Court found that the decedent paid an inflated, above-market rent for the use of the property as a means of subsidizing the Maxwells' mortgage payments. *Estate of DuPont v. Commissioner*, 63 T.C. 746, 766 n. 3, 1975 WL 3025 (1975). However, the Tax Court did not consider the market-rental value of the property—let alone make findings on the issue. The majority's reliance on the Maxwells' decision not to demand rent from the estate after the decedent's death is misplaced. In *Estate of Barlow*, a delay in the payment of rents for four years did not obviate the economic significance of the lease. *See* 55 T.C. at 668.

The majority's reasoning is also contrary to our treatment of rental payments in *Rosenfeld*. In that case, a physician gave an ownership interest in his medical office property to an independent trust administered on behalf of his children. In connection with the transfer of the property, the physician retained the right to lease the property at a market rent for use as his office. The Commissioner disallowed the physician's deductions of the rental payments as business expenses on the theory that the gift/leaseback was a sham. As in the case at bar, the Commissioner argued that "nothing changed [following the transfer of the property] because [the taxpayer] was occupying the same premises as a lessee which he previously used as an owner." 706 F.2d at 1282–83. We rejected the Commissioner's argument as "disingenuous," reasoning that the taxpayer "could have given the property to his children in trust and leased property from a third person for an amount equally fair and reasonable for his medical office. It is clear ... that a rent deduction would have been entirely proper in such a case." *Id.* at 1283.

Our reasoning in *Rosenfeld* applies equally here. The economic reality of the situation would have been the same if the Maxwells had rented the property to a third party under similar lease terms, and utilized the rental income to satisfy the mortgages. Under Tax Court precedents and the law of this Circuit, the fact that the Maxwells rented the property to the decedent instead of a third party did not make the lease agreement a facade to mask the decedent's continued ownership.

## II. The "Sham" Purchase

The majority holds that the Maxwells proffered no consideration in connection with their purchase of the property from the decedent and, thus, that there was not a *bona fide* sale within the meaning of § 2036(a). However, in examining the economic results of the transaction, the majority misconstrues both Tax Court case law and the stipulated facts in the record.

The majority endorses the Tax Court's conclusion that "the mortgage note here had no value at all [for purposes of § 2036(a)] if there was no intention that it would ever be paid." J.A. at 191–92; *see* Majority Opinion at 595–96. This construction of the statute is flatly contrary to prior Tax Court cases concerning similar transactions upon which the Maxwells apparently relied.

It is well established that the Tax Court is governed by the doctrine of *stare decisis*. *See United States v. Byrum*, 408 U.S. 125, 135, 92 S.Ct. 2382, 2390, 33 L.Ed.2d 238 (1972); *Smith v. Commissioner*, 926 F.2d 1470, 1479 (6th Cir.1991); *Frantz v. Commissioner*, 784 F.2d 119, 126 n. 4 (2d Cir.1986),

*cert. denied*, 483 U.S. 1019, 107 S.Ct. 3262, 97 L.Ed.2d 761 (1987). Indeed, the doctrine applies with special force in the tax context, given the important reliance interests involved. *See Byrum*, 408 U.S. at 135, 92 S.Ct. at 2390.

In a line of cases beginning nearly 30 years ago, the Tax Court has stated that where "property is transferred in exchange for a valid, enforceable, and secured legal obligation to pay full value, there is no gift for Federal tax purposes." *Wilson v. Commissioner*, 64 Tax Ct.Mem.Dec. (CCH) 583, 584 (1992); *see Laughinhouse v. Commissioner*, 80 T.C. 425, 431 n. 8, 1983 WL 14799 (1983); *Estate of Kelley v. Commissioner*, 63 T.C. 321, 323–24 (1974); *Haygood v. Commissioner*, 42 T.C. 936, 946 (1964). "This is true even if the parties are related and the seller/obligee *indicates an intent to forgive the indebtedness in the future.*" *Wilson*, Tax Ct.Mem.Dec. (CCH) at 584 (emphasis added); *see Laughinhouse v. Commissioner*, 80 T.C. at 431 n. 8; *Estate of Kelley*, 63 T.C. at 323–24; *Haygood*, 42 T.C. at 946; *see also Story v. Commissioner*, 38 T.C. 936, 942, 1962 WL 1169 (1962) (the question is "not whether [the payee] intended to collect the debt, but whether [the payee] intended to make a gift of the amount when it was advanced or to create an obligation portions of which could be forgiven from time to time as gifts in the future"). While the Commissioner has consistently expressed disagreement with the reasoning of and refused to acquiesce in the Tax Court's reasoning in these cases, *see, e.g.*, Rev.Rul. 77–299, 1977–2 C.B. 343 (1977), the Commissioner's disagreement does not impair their precedential value. Neither does the Commissioner's nonacquiescence affect the reasonableness of taxpayer reliance upon the Tax Court precedents.

The majority suggests that *Haygood, Estate of Kelley* and *Wilson* only stand for the proposition that an "intent to forgive notes in the future does not *per se* disqualify such notes from constituting valid indebtedness." Majority Opinion at 597. However, I read these cases to state that the inquiry ends in the taxpayer's favor upon a finding that the payee received a legally enforceable note or other instrument of indebtedness in return for a property.

In *Haygood*, the question before the Tax Court was whether a taxpayer transferred properties to her son for good and adequate consideration, and thus could avoid paying gift tax on the entire value of the properties. In return for the properties, the son gave his mother notes secured by the properties. The mother never intended to collect on the notes, and forgave payments on them as they came due. Indeed, unlike the Maxwells, the son in *Haygood* never made a single payment on the notes. However, the court did not focus upon the failure to enforce the payment obligations. Rather, in ruling for the taxpayer, the court relied on the validity of the obligations created by the notes, stating: "the evidence certainly supports the fact that the notes did create enforceable indebtedness even though petitioner had no intention of collecting the debts but did intend to forgive each payment as it became due." 42 T.C. at 946.

The Tax Court upheld a similar transaction in *Estate of Kelley* by, once again, focusing upon the legal obligations created by the notes:

> There is nothing in the trial record to support a finding that the notes and vendor's liens, both in proper legal form and regular on their face, were not valid and enforceable. Nor is there any evidence of any agreement between petitioners and the donees qualifying the rights of petitioners under either the liens or the notes. *There is no solid evidence indicating that petitioners did not purposely and consciously reserve all rights given to them under the liens and notes until they actually forgave the notes.*

63 T.C. at 324–25 (emphasis added).

The purposes of the transactions at issue in *Haygood* and *Estate of Kelley* and the transaction in this case were the same: to remove properties from estates without paying taxes by selling them to close relatives in exchange for secured notes. And the notes at issue here were legally valid, like the notes at issue in the earlier Tax Court cases. Yet, in *Haygood* and *Estate of Kelley*, the Tax Court found such sales *bona fide*, while, in

this case, the Tax Court found that the mortgage notes were without substance.

In attempting to distinguish *Haygood* and *Estate of Kelley*, the majority distorts them. For example, the majority suggests that the Tax Court's finding that the decedent and the Maxwells had an "understanding" that the mortgage would eventually be forgiven at the time the property was transferred makes this case unique. However, the payee in *Haygood* also intended to forgive the notes executed in her favor from the time she received them. *See* 42 T.C. at 946. And, while the majority correctly states that the *Estate of Kelley* court never explicitly found that the payee had formulated the intent to forgive the notes on the day she received them, the majority fails to note that the *Estate of Kelley* opinion focussed upon the enforceability of the notes—the fact that they *could* be enforced—and quoted approvingly language in *Haygood* stating that an intent to forgive would not defeat the economic substance of a transaction. *See* 63 T.C. at 324–25.

*Deal v. Commissioner*, 29 T.C. 730, 1958 WL 1114 (1958), relied upon by majority, is inapposite. That case involved notes which were not secured by the property at issue, and in excess of one-half of the face value of the notes was forgiven within one week after they were executed. *See id.* at 736. Under these circumstances, the court found that the notes "were not given as part of the purchase price of the property which petitioner conveyed...." *Id.* at 737. By contrast, the Maxwells incurred an indebtedness secured by the property, and made regular payments on the notes for over two years.

The economic substance of the mortgages is established not only by the lack of evidence contradicting their validity and enforceability, but also by the actions of the parties. The majority states that the Maxwells were never called upon to make payments upon the notes. *See* Majority Opinion at 595–96. It is unclear whether the majority means that the Maxwells made no interest or no principal payments. In fact, they made both.

First, as I've discussed, the Maxwells made monthly interest payments on the notes until the decedent's death. The unremarkable fact that the mortgage payments approximated the decedent's rent, which the majority relies upon in considering whether the decedent retained possession of the property, does not in itself vitiate the economic substance of the rents.

Second, the decedent forgave annually $20,000 of the principal amounts the Maxwells owed on the mortgages, starting with an initial forgiveness at the time of the conveyance of the property to the Maxwells. The amounts forgiven corresponded to the decedent's $10,000 per donee exclusion from the gift tax. *See* 26 U.S.C. § 2503. Thus, each time the decedent forgave a portion of the amounts owed on the mortgages, she effectively made a gift to the Maxwells by reducing their mortgage obligations. The substance of these transactions would have been exactly the same had the decedent made annual cash gifts totalling $20,000 to the Maxwells and the Maxwells then independently chose to use those or other monies to make principal payments on the mortgages. The fact that the decedent chose to benefit the Maxwells by reducing their obligations directly rather than by sending them a check and receiving another check in return does not make the Maxwells' satisfaction of portions of the principal amounts any less genuine.

## CONCLUSION

I am convinced that the Tax Court misconstrued its own precedents and disregarded our cases in concluding that the decedent retained possession and enjoyment of the property absent a determination that the rents were an above-market rate subsidy for the Maxwells' mortgage payments. If this were the only error by the Tax Court, I would vacate its decision and remand for further findings on contemporaneous market rental rates.

However, I believe that the Tax Court committed reversible error in concluding that the sale was not *bona fide* and without adequate and full consideration. Were we writing on a clean slate, we might not construe § 2036(a) to uphold the validity for tax pur-

poses of a decedent's sale of a property to a close family member with the intent to forgive mortgage obligations. However, *Haygood, Estate of Kelley* and their progeny make it plain that no legal significance attaches to the intent not to collect on such obligations. The decedent and the Maxwells reasonably relied upon these precedents, which the Tax Court cited approvingly as recently as last year. In collaborating with the Tax Court's disregard of its own precedents, the majority endorses judicial arbitrariness and disregard of *stare decisis*.

I respectfully dissent.