T.C. Memo. 2020-71

UNITED STATES TAX COURT

ESTATE OF MARY P. BOLLES, DECEASED,
JOHN T. BOLLES, EXECUTOR, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 4803-15.                    Filed June 1, 2020.

William E. Taggart, Jr., and Josh P. Davis, for petitioner.

Andrew R. Moore, and Michael Skeen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Mary Bolles died on November 19, 2010.  Her son John

filed a Federal estate tax return, and respondent determined a deficiency in estate

[*2] tax of $1,152,356.[1]  In this opinion we refer to Mary Bolles by her name or as decedent.  We refer to her sons, John and Peter, by their first names.

This case has a long procedural history during which related cases asserting gift tax liability were dismissed and petitioner filed numerous motions attempting unsuccessfully to remove any consideration of whether Mary made gifts to Peter from the docket before us.  At trial respondent conceded the primary issue in the notice of deficiency, whether the estate had undervalued Peter's debt, and asserted the alternative position from the notice.  Accordingly, the issue remaining in dispute is whether advances totaling $1,063,333 that Mary made over many years to Peter should be treated as loans or as gifts.  Each side sees the answer as totally one way.  We disagree with both parties as we explain herein.

FINDINGS OF FACT

When John timely filed the petition, he was a resident of California.  The evidence in this case consists of stipulated facts, documents admitted by stipulation, and testimony.  The facts stated in the two stipulations of fact are incorporated in our findings.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

**[*3]**    A loving mother of her five children, Mary was determined to provide her assets to her children equally.  Her practice was to keep a personal record of her advances and occasional repayments for each child.  On the basis of her original intent and the advice of her tax counsel, she treated the advances as loans.  She forgave the "debt" account of each child every year on the basis of the gift tax exemption amount.  Her practice would have been noncontroversial but for the substantial funds she advanced to Peter.

Mary married John Savage Bolles in 1935, and they divorced in 1977.  Decedent and John Savage Bolles established the Bolles Trust in connection with the dissolution of their marriage to hold some of their jointly owned property, including their substantial art collection and an office building in San Francisco.  At the time of her death Mary and her five children were among the beneficiaries of the Bolles Trust.  John Savage Bolles died in 1983.

Peter was the oldest of their five children.  He graduated from college with a degree in architecture in 1965.  On the basis of his academic achievements and his father's reputation as an architect in San Francisco, Peter's professional career showed great promise.  He began his career in Boston.  He took over his father's architecture practice in San Francisco in the early 1970s and enjoyed some early success in attracting clients.  Peter expanded the practice through the 1970s into

[*4] the early 1980s; but despite his salesmanship he began to have financial difficulties largely because his expectations exceeded realistic results. By 1983 Peter's practice was not current on its bills. In July 1983 Peter, as president of Bolles Associates and Peter B. Bolles, P.A., entered into an agreement with the Bolles Trust to use trust property as security for $600,000 in bank loans. The agreement also reflects that the Bolles Trust was owed $159,828 in back rent by Peter's practice. Within a year Peter had failed to meet the obligations of the agreement, and the Trust was ultimately held liable for the $600,000. Mary had contemporaneous knowledge of these events.

Mary transferred $1,063,333 to or for the benefit of Peter from 1985 through 2007. The annual amounts are shown below:

| Year | Annual amount |
| --- | --- |
| 1985 | $7,000 |
| 1986 | 98,121 |
| 1987 | 35,500 |
| 1988 | 155,500 |
| 1989 | 40,500 |
| 1990 | 89,075 |
| 1991 | 105,682 |
| 1992 | 210,126 |

[*5]

| | |
|------|--------|
| 1993 | 24,780 |
| 1994 | 10,685 |
| 1995 | 833 |
| 1996 | 3,750 |
| 1997 | 8,850 |
| 1998 | 14,750 |
| 1999 | 40,790 |
| 2000 | 24,200 |
| 2001 | 22,450 |
| 2002 | 43,653 |
| 2003 | 44,650 |
| 2004 | 72,390 |
| 2005 | 7,200 |
| 2006 | --- |
| 2007 | 3,348 |

We note these numbers exceed the amount in dispute by $500, but respondent has conceded this additional amount.

Peter did not repay decedent after 1988 although he did hold gainful employment for many years after that and attempted to revive his practice in Las Vegas.

**[*6]** Decedent directly transferred money to Peter, deposited money into accounts to which Peter had access, and made payments on loans taken out by Peter. Decedent also issued a letter to American Asian Bank in September 1986 allowing Bolles Associates to withdraw funds totaling $27,121 to pay interest on a loan. Later, in April 1992 decedent paid $196,928 to settle the balance of a bank loan Peter owed.

Decedent was the settlor of the Mary Piper Bolles Revocable Trust dated October 27, 1989. Under the revocable trust decedent specifically excluded Peter from any distribution of her estate upon her death.

In late 1994 or early 1995 decedent began working with Karen Hawkins, an attorney who assisted decedent in organizing her financial affairs and prepared various documents for decedent, including estate planning documents. As part of her estate planning, decedent signed a "First Amendment to Mary Piper Bolles Trust" (First Amendment) which, in article five, "Distributions After Settlor's Death", no longer explicitly excluded Peter from any distribution but provided a formula to account for the "loans" made to him during Mary's lifetime.

Among the documents Ms. Hawkins drafted was a one-page document captioned "Acknowledgement [sic] and Agreement Regarding Loans" (Acknowledgment). The Acknowledgment is dated May 3, 1995, and signed by

**[\*7]** Peter.  The Acknowledgment recites that Peter "has received, directly or indirectly, loans from Mary Piper Bolles in a total amount of $771,628" and as of May 3, 1995, "he has neither the assets, nor the earning capacity, to repay all, or any part, of the amount previously loaned, directly or indirectly, to the undersigned by Mary Piper Bolles."  As a result Peter "acknowledges and agrees" that,

> irrespective of the uncollectability or unenforceability of the said loans, or any portions thereof, the entire amount specified hereinabove, $771,628.00, plus an imputed amount of interest thereon, computed at the Applicable Federal Rate for short-term indebtedness determined as of the end of each calendar year, shall be taken into account for purposes of any and all calculations to be made pursuant to Article Five, paragraph 5.3, of the First Amendment to Mary Piper Bolles Revocable Trust executed on November 8, 1994.

Contrary to the recital in the Acknowledgment, the First Amendment was not executed until August 27, 1996.  The calculations found in article five of the First Amendment describe the manner in which advances, described as loans, are to be taken into account in dividing the trust assets among decedent's children upon her death.  In essence, under subparagraph (b), the value of the trust assets after allowance for expenses such as estate tax is divided equally; however, each child's share is reduced, and that amount redistributed pro rata among the other

[*8] beneficiaries, by the amount of the child's outstanding loans, if any, plus accrued interest.

The explanation of adjustments to the notice of deficiency states:

I.  Schedule C, Items 2 and 3

It is determined that the fair market value of the Promissory Note and receivable due from Peter P. Bolles under IRC section 2031 is $1,063,333 instead of zero as reported and that interest on the Promissory Note and receivable is includible in the gross estate under IRC section 2033 in the amount of $1,165,778.  Therefore, the value of the gross estate is increased by $2,229,111.

II.  Adjusted Taxable Gifts

In the event it is determined that the fair market value under IRC section 2031 of the Promissory Note and receivable from Peter Bolles and interest on the Promissory Note and receivables is zero then it is determined that Mary P. Bolles transferred property to Peter Bolles during her life such that "adjusted taxable gifts" in the amount of $1,063,333 is included in computing taxpayer's estate tax liability under IRC section 2001(b).

OPINION

Respondent has conceded the primary position in the notice of deficiency that the estate tax return undervalued the debt from Peter and now relies solely on the alternative argument that Mary's advances to Peter were gifts.  The first question presented by the alternative argument is whether interest on the advances may be included in the adjustment such that the adjustment exceeds the amount

**[\*9]** stated in the notice of deficiency's explanation of the alternative adjustment. The inclusion of interest on the alleged gifts is not stated in the notice of deficiency or the answer. Also, respondent has not amended his answer to expand the simple text of the notice of deficiency. While the alternative position in the notice of deficiency is at issue, there is no procedural basis to expand that position beyond its own terms and only $1,063,333 is at issue.

The second issue is petitioner's argument that under Rule 142 respondent has the burden of proof on the gift issue. While petitioner's position has merit, we do not need to resolve the issue because the evidence in this case permits a resolution on the record of trial, and we do not rely on the burden of proof to decide this case.

Finally, we address the issue of whether the advances were loans or gifts. Both parties rely on the analysis of Miller v. Commissioner, T.C. Memo. 1996-3, aff'd, 113 F.3d 1241 (9th Cir. 1997), for the traditional factors used to decide whether an advance is a loan or a gift. Those factors are explained as follows: (1) there was a promissory note or other evidence of indebtedness, (2) interest was charged, (3) there was security or collateral, (4) there was a fixed maturity date, (5) a demand for repayment was made, (6) actual repayment was made, (7) the transferee had the ability to repay, (8) records maintained by the transferor and/or

**[*10]** the transferee reflect the transaction as a loan, and (9) the manner in which the transaction was reported for Federal tax purposes is consistent with a loan.

These factors are not exclusive. See, e.g., Estate of Maxwell v. Commissioner, 98 T.C. 594 (1992), aff'd, 3 F.3d 591 (2d Cir. 1993). In the case of a family loan, it is a longstanding principle that an actual expectation of repayment and an intent to enforce the debt are critical to sustaining the tax characterization of the transaction as a loan. Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), aff'd per curiam, 192 F.2d 391 (2d Cir. 1951).

While Mary recorded the advances to Peter as loans and kept track of interest, there were no loan agreements or attempts to force repayment. Respondent focuses on the lack of security for the loans to Peter. We agree that the reasonable possibility of repayment is an objective measure of Mary's intent. The estate maintains that during her life Mary always considered these advances as loans. We cannot reconcile this argument with the deterioration of Peter's financial situation and the ultimate failure of his practice in San Francisco and later in Las Vegas.

Peter's creativity as an architect and his ability to attract clients likely impressed Mary. We find she expected him to make a success of the practice as

[*11] his father had, and she was slow to lose that expectation. However, it is clear she realized he was very unlikely to repay her loans by October 27, 1989, when her trust provided for a specific block of Peter's receipt of assets at the time of her death. Accordingly, in 1990 the "loans" lost that characterization for tax purposes and became advances on Peter's inheritance from Mary. In conclusion, we find the advances to Peter were loans through 1989 but after that were gifts. We have considered whether she forgave any of the prior loans in 1989, but we find that she did not forgive the loans but rather accepted they could not be repaid on the basis of Peter's financial distress.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.